WALTENBERGER, ADMR., APPELLANT, *v*. PEARSON ET AL., APPELLEES.

(No. 901—Decided June 24, 1946.)

*Mr. H. Lyle Shank, Mr. Willis K. Batchelet* and *Messrs. Lippincott & Lippincott,* for appellant.
*Mr. T. R. Hamilton,* for appellees.

GUERNSEY, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Allen county, in an action wherein the appellant, Julius R. Waltenberger as administrator of the estate of Edna G. Thomas, deceased, was plaintiff, and the appellees, Elsie Pearson, Katherine S. Pearson, Charles E. Pearson and The South Side Building & Loan Association of Lima, Ohio, were defendants.

The action is one in replevin to recover the possession of certain personal property located in a lockbox at the office of the defendant The South Side Building & Loan Association, which the plaintiff alleged was wrongfully detained by the defendants. As the personal property was not taken, the action, under the provisions of Section 12070, General Code, proceeded as one for damages only.

The personal property sought to be replevined consisted of the following classes of property:

First. United States savings bonds registered in the names of "Edna G. Thomas or Kathryn E. Lehman," "Edna Thomas or Donald Gene Mack," "Edna G. Thomas or Mary K. Bennett," "Edna G. Thomas or Judith K. Bennett," "Edna G. Thomas or Sandra Lynn Bennett," "Mrs. Edna G. Thomas or Mrs. Elsie M. Pearson," "Mrs. Edna G. Thomas or Chas. E. Pearson," "Edna G. Thomas or Robert Harry Pearson," "Mrs. Edna G. Thomas or Margaret Ann Pearson," "Mrs. Edna G. Thomas or Richard S. Stager," "Edna G. Thomas or Miss Betty Lou Lewis," "Mrs. Edna G. Thomas or Nellie A. Mack," and "Mrs. Edna G. Thomas or Mrs. Gladys A. Lewis."

Second. United States savings bonds registered in the names of "Edna G. Thomas and Janice Carol Mack," "Edna G. Thomas and Robert F. Mack" and "Edna G. Thomas and Dorothy Louise Stager."

Third. A passbook issued by The South Side Build-

ing & Loan Association in the names of "Mrs. Edna G. Thomas or Charles E. Pearson," showing a balance of $298.98, on deposit as of July 1, 1943.

Fourth. Cash consisting of bills and silver, in the total amount of $4866.36.

Certain other personal property located in such box was, in the petition, alleged to be unlawfully detained by the defendants. However, in their answers, the defendants disclaimed any interest in this property, so that such property was not a subject of consideration in the judgment rendered in this action.

At the close of the evidence introduced by the plaintiff, the court, on motion of the defendants, directed a verdict in favor of the defendants and against the plaintiff, and judgment was thereafter duly entered in favor of the defendants and against the plaintiff, and that is the judgment from which this appeal is taken.

As shown by the bill of exceptions, the evidence introduced by the plaintiff was as follows:

The lockbox in question was rented by the defendant Charles E. Pearson on July 17, 1939, and at the time he rented it, as a part of the contract of rental, he authorized the decedent Edna Thomas to have access to the box at any time, the same as he would have in person. At a later date he extended such authorization so that he, Edna Thomas and Elsie Pearson, his wife, were authorized to have access to the box at any time.

Jesse Thomas, husband of Edna Thomas, conducted a restaurant business in Angola, Indiana, and Edna Thomas worked in the restaurant and handled all the monies derived from the operation thereof.

Edna Thomas, without the knowledge of her husband, Jesse Thomas, took the money derived from the operation of the restaurant and purchased and

paid for the United States savings bonds, hereinbe-
fore referred to, and, with a portion of such funds,
maintained the savings account in The South Side
Building & Loan Association, hereinbefore referred
to. She also, with a portion of such funds, made
deposits in The City Loan Company of Lima, Ohio,
from time to time, the certificates for which were made
payable to her or Charles E. Pearson. These deposits
were continued and renewed from time to time for
several years until, on June 30, 1941, the deposits were
represented by two certificates made payable as afore-
said, one for $3129.22 and the other for $624.90. The
deposit represented by the first certificate was with-
drawn on September 13, 1941, and the deposit repre-
sented by the second certificate was withdrawn on
September 20, 1941, the total withdrawal of both
certificates amounting to $3754.12.

In a letter under date of July 12, 1943, addressed by
Charles Pearson to Jesse Thomas, Mr. Pearson stated:

''I received a letter from Elsie, saying you checked
over the things in my safety deposit box. Most of the
stuff in the box was Edna's. I'll tell you what she
wanted done with the part I know of. Once when she
was in Lima she said she wanted me to give the bonds to
whose ever name was on it with hers and the cash be-
long to me if any thing happened to her. I asked her
what about you, she said you had the real estate
and a few other things and she thought you had enough
to live on. About Kathryn's house and Harry's note
she never told me, what she wanted done with it. The
money in the bank book in her's and my name was
mine. The money in her's and Mom's name belongs
to Mom. Edna had money in the city loan in her
name and mine for a while but she told me to draw it
out and put it in my box.''

In another letter to Jesse Thomas, under date
of August 2, 1943, Mr. Pearson stated:

"I received your letter this noon that you wrote July 30 asking me about my safety deposit box contents. I have already told Elsie to give you Harry's note and what papers I have on Kathryn's house. I'm sure if you go and ask her for them, she will give them to you. About the bonds. Mr. Hamilton says, if Edna told me that I was to give them to whose ever name was on with her's that I was custodian of them and was responsible for them till the persons got them and about the cash in the box. Edna had it in the city loan for a while in her name and mine. Later she told me to draw it out and put it in my box. She also told me, if any thing ever happened to her, I was to have the money. * * * As about the other money I can't say much, but I know it was to be Mom's. I have heard Edna say to Mom that if she needed any money to go to the bank and get it."

There is no evidence showing the source of the balance of the cash in the safety deposit box, and there is no evidence, other than the evidence as to the manner in which such bonds were registered, showing any agreement or arrangement between Edna Thomas and the other persons in whose names the bonds were registered as to the bonds or the proceeds thereof.

There is no evidence showing any contract with The City Loan Company or with The South Side Building & Loan Association with reference to such deposits made therein, other than that the accounts were in the names mentioned in the certificates of The City Loan Company and the passbook of The South Side Building & Loan Association.

Plaintiff makes the following assignments of error:

1. Overruling the demurrer filed by the plaintiff to the several answers on file, and overruling the renewal of the demurrer at the beginning of the trial.

2. Allowing the motion of the defendants for a

directed verdict at the end of the evidence offered by the plaintiff.

3. Directing the jury to return a verdict of "no cause of action."

4. Overruling the motion for a new trial.

5. Other errors apparent in the record.

Before considering these assignments of error it will be advisable to discuss the purpose and nature of this action.

The principal purpose of a writ of replevin is to enforce the claim of an owner of property for its delivery to him by one who wrongfully detains it. The primary object is to determine the right of possession. What is an action in "detinue" at common law is now, by the General Code, designated as an action in replevin.

The action for damages, where the property has not been taken, has been regarded as one in the nature of an action of trover.

The general rule is well settled that replevin can be maintained only for specific property capable of identification and delivery and will not lie for an undivided interest in personal property. 35 Ohio Jurisprudence, 437, Section 17.

Assignment of error No. 1 will be first considered, and assignments 2 and 3 will be considered together as they involve the same subject matter. The other assignments will then be considered.

1. Plaintiff filed demurrers to the answers of Charles E. Pearson and Elsie Pearson. The demurrer to the answer of Charles E. Pearson was directed to the defense pleaded in his answer, that all the United States savings bonds in question were registered in the names of, and payable to, Edna G. Thomas or another person as co-owners, and that under the regulations of the United States Treasury

Department, relating to bonds of this character, the survivor of such co-owners is the sole and absolute owner of the bonds and payment will be made only to such survivor. The demurrer to the answer of Elsie Pearson was directed to the defense pleaded in her answer to the same effect except that such defense was limited to the bonds registered in the names of "Edna Thomas or Elsie Pearson."

An inspection of such regulations discloses the following provision applicable to the bonds in question:

"Sec. 315.45. Payment or reissue.—A savings bond registered in the names of two persons as co-owners in the form, for example, 'John A. Jones or Mrs. Mary C. Jones', will be paid or reissued as follows; * * *

"(c) Payment or reissue after the death of one co-owner.—If either co-owner dies without the bond having been presented and surrendered for payment or authorized reissue, the surviving co-owner will be recognized as the sole and absolute owner of the bond and payment or reissue, as though the bond were registered in his name alone, will be made only to such survivor."

"Sec. 315.13. Judicial proceedings (judgment creditors, trustees in bankruptcy, receivers of insolvents' estates and conflicting claimants).—A claim against an owner or co-owner of a savings bond and conflicting claims as to ownership of or interest in such bond as between co-owners or the registered owner and a designated beneficiary, will be recognized when established by valid judicial proceedings and payment or reissue will be made, upon presentation and surrender of the bond, except as follows:

"(1) No such proceedings will be recognized if they would give effect to an attempted voluntary transfer *inter vivos* of the bond or would defeat or impair

the rights of survivorship conferred by these regulations upon a surviving co-owner or beneficiary.''

''Sec. 315.4. Authorized forms of registration, series E, and general provisions relating to their use.

''(a) Forms of registration.—Bonds of series E may be registered only in the names of individuals (natural persons), whether adults or minors, in their own right in one of the following forms:

''(1) One person: In the name of one person, for example: 'John A. Jones.'

''(2) Two persons—Co-ownership form: In the names of two (but not more than two) persons in the alternative as co-owners, for example: 'John A. Jones or Mrs. Ella S. Jones.'

''No other form of registration establishing co-ownership is authorized.''

These provisions, with the force and effect of law, constitute a part of the contracts by which the bonds are sold by the government and determine not only the person to whom the bonds are to be paid but also determine the property rights, as between themselves, of the parties in whose names as co-owners the bonds are registered. Consequently where, as in the instant case, bonds are registered in the manner pleaded in such defenses, they become the absolute property of the survivor of the co-owners after the death of one of the co-owners, and the executor or administrator of such deceased co-owner has no right, title or interest in them or right to the possession thereof.

The court, therefore, did not err in overruling such demurrers, or the renewals thereof, and this assignment of error is without merit.

2 and 3. These assignments involve the question whether there was any evidence tending to prove that the plaintiff, as against the defendants, was entitled

to the possession of any of the personal property in controversy.

Under assignment No. 1, we have held that the plaintiff neither owned nor is entitled to the possession of such of the United States savings bonds as were registered in the names of plaintiff's decedent or another as co-owners.

The next question to be determined is whether the plaintiff was the owner and entitled to the possession of the other United States bonds in controversy, which we have hereinbefore designated as class No. 2.

It will be noted, from the above-quoted regulations, that bonds of series E may be registered in the names of two persons in the alternative as co-owners and no other form of registration establishing co-ownership is authorized, so it would appear that there is considerable doubt as to whether any of the bonds in controversy were registered in the names of Edna G. Thomas and another, coming within the class designated as class No. 2, of the personal property sought to be replevined. But assuming, as we must assume from the evidence, that certain of the bonds were so registered, such bonds, in the absence of regulations to the contrary, and no regulations to the contrary have been brought to the attention of the court, would be jointly owned by the persons in whose names they are registered. In the absence of evidence to the contrary, and there is no evidence to the contrary, such bonds would be presumed to be owned in equal shares by the persons in whose names they are registered. Upon the death of one of the registrants, his share in the bonds would descend to his heirs, subject to administration as a part of his estate, and the surviving registrant would retain his half interest.

In such situation, the administrator of the estate

of the deceased registrant would not have the right to possession of the bonds to the exclusion of the surviving registrant, and, there being no such right to possession, an action in replevin by such administrator to recover the possession of such bonds could not be maintained.

In the absence of further evidence on the subject, other than above outlined, we do not decide or attempt to decide the respective interests the respective parties may have in the bonds or the proceeds thereof, but simply decide that upon the evidence adduced the plaintiff is not entitled to the possession of such bonds as against the defendants.

The next matter to be considered is whether, on the evidence adduced, the plaintiff is entitled to the possession of the passbook of the savings and loan association, which we have designated as class 3 of the property in controversy.

The only evidence before us reflecting on this question is the evidence that the deposit account represented by the passbook stands in the names of "Mrs. Edna G. Thomas or Charles E. Pearson."

It is the judgment of the writer of this opinion that the evidence mentioned shows the account to be a joint account, as there are no words purporting to create a right of survivorship in the account. Joint tenancies with right of survivorship are not recognized by the courts of Ohio unless such right of survivorship is prescribed by the instrument creating such joint tenancy.

The account does not constitute a joint and survivorship account, within the meaning of Section 9648, General Code, relating to deposits of that character in building and loan associations, as the evidence fails to show a joint order of the parties to the account to the building and loan association that such deposits or any part thereof were to be payable to the order

of any one or more of such joint depositors and to continue to be so payable notwithstanding the death or incapacity of one or more of the persons making them.

It has been held that the adjudication of lunacy and the appointment of a guardian of one of the parties to a joint and survivorship account terminates the agreement, and, as each had a complete interest in the entire account, equity requires, in the absence of extraordinary circumstances, an equal division of the account between the parties involved, as of the time the guardian was appointed. *Abrams, Gdn.,* v. *Nickel,* 50 Ohio App., 500, 198 N. E., 887, motion to certify overruled May 29, 1935.

By the same reasoning, it would appear that, where a deposit account in a building and loan association is payable to either one of two persons, with no right of survivorship in either specified, such account terminates on the death of one of the parties and equity requires, in the absence of extraordinary circumstances, which did not exist in the instant case, an equal division of the account between the administrator of the deceased party, and the surviving party, as of the time of the death of the deceased party.

However, in the instant case, it is unnecessary to determine, and we do not determine, whether the deposit account was a joint account or a joint and survivorship account. In the first event the administrator of the estate of Edna G. Thomas would be entitled to half of the account and Charles E. Pearson, the other party to the account, the other half. In the second event, Charles E. Pearson as survivor would be entitled to the whole of the account. In neither event would the administrator of the estate of Edna G. Thomas be entitled to the possession thereof to the exclusion of Charles E. Pearson, and consequently

could not maintain an action to replevin the passbook representing the account.

We are not deciding or attempting to decide the respective interests of the parties in the account, but simply hold that upon the evidence adduced the plaintiff is not entitled to the possession thereof as against the defendants.

The next matter to be considered is the question of the right to possession of the cash in the safety deposit box.

As hereinbefore noted, the evidence discloses that $3754.12 of the cash amounting to $4866.36 in the safety deposit box was derived by Charles E. Pearson from withdrawals made by him on certificates of deposit issued by The City Loan Company, payable to Edna G. Thomas or Charles E. Pearson, and there is no evidence as to the derivation of the balance of such monies.

In order for the plaintiff to recover such monies in replevin, or damages in lieu thereof, it was incumbent upon him to prove his right to the immediate possession of such monies. Plaintiff's right to possession in the instant case depended upon his ownership of such monies in his capacity as administrator of the estate of Edna G. Thomas, deceased.

As to the money in the safety deposit box in excess of the proceeds of the certificates of deposit, the plaintiff failed to show that his decedent had any right, title or interest therein. We will, therefore, confine our further consideration of the question of the right of possession of the cash in the safety deposit box, to the proceeds of the certificates of deposit above mentioned.

Under the terms of these certificates, and in the absence of any further agreement between himself and Edna G. Thomas concerning the subject matter,

Charles E. Pearson would have had the legal right to withdraw the funds on deposit and to hold the same as his own property upon making such withdrawal. However, the evidence shows a further agreement between Charles E. Pearson and Edna G. Thomas with reference to the subject matter.

The letters of Charles E. Pearson to Jesse Thomas, surviving spouse of Edna G. Thomas, above mentioned, show that Pearson, at the direction of Edna G. Thomas, withdrew the deposits from The City Loan Company and put the proceeds in the safety deposit box rented by him, and that such funds were put and kept in the box upon the understanding that "if anything ever happened to her" (Edna G. Thomas), that is, if she died, "the cash belonged to me" (Charles E. Pearson). "I [Charles E. Pearson] was to have the money."

The evidence further shows that while the box was rented by Charles E. Pearson, Edna G. Thomas, under the terms of the rental contract, had the right of access to it the same as Charles E. Pearson would have in person.

The fact that it was the understanding and agreement of the parties that the funds were to belong to Pearson upon and in the event of the death of Edna G. Thomas excludes any hypothesis that the funds belonged to Pearson during the lifetime of Edna G. Thomas, and this fact, plus the fact that Edna G. Thomas had the right of access to the safety deposit box during her lifetime, excludes any hypothesis that she had parted with dominion over such funds and that the transaction constituted the delivery of a gift by Edna G. Thomas in her lifetime to Charles E. Pearson to take effect on her death.

Consequently the transaction, as shown by the evidence adduced on the subject, amounted to an attempted testamentary disposition of the funds, which

could be made only by will, and was therefore ineffective to pass title to Charles E. Pearson upon the death of Edna G. Thomas.

The plaintiff, therefore, through the evidence adduced by him, made a *prima facie* case showing that he was entitled to the possession of such funds or for damages in lieu thereof. So far as such funds are concerned, the court erred in directing a verdict in favor of the defendant Charles E. Pearson and against the plaintiff, which error requires a reversal of the judgment.

For the reasons mentioned, assignments 2 and 3 are without merit except in the respect hereinbefore mentioned.

4. The subject matter of assignments 2 and 3 above mentioned constitutes two of the grounds on which the plaintiff based his motion for a new trial, and as they have been fully considered under such assignments we will not discuss them further.

The only other ground for the motion for new trial is that the court erred in the rejection of testimony offered by the plaintiff. This error is not specified or argued in plaintiff's brief, so the same will not be considered by the court.

5. The plaintiff, in his brief, neither specifies nor argues any errors other than those above mentioned, so this assignment will not be considered.

As we find error in the particulars hereinbefore set forth, the judgment of the Common Pleas Court is reversed at costs of defendant Charles E. Pearson, and the cause is remanded for a new trial and further proceedings according to law, in accordance with this opinion.

*Judgment reversed.*

MIDDLETON, P. J., and JACKSON, J., concur.