CHAMBERS et al. v. GILKEY.

No. 13761.

Court of Civil Appeals of Texas. Dallas.

Feb. 14, 1947.

Rehearing Denied March 21, 1947.

Dissenting Opinion March 26, 1947.

F. L. Henderson, of Bryan, and Tyson, Dawson & Dawson, of Corsicana, for appellants.

Hamilton, Dyer & Shults and Bowyer, Gray, Thomas, Crozier & Jaffe, all of Dallas, for appellee.

BOND, Chief Justice.

This suit was instituted in the District Court of Kaufman County, Texas, by T. O. Gilkey as executor and beneficiary of the estate of his mother, Mrs. A. L. Gilkey, deceased, for the construction of her will. The defendants are the only surviving heirs of Roy Gilkey, a deceased son of Mrs. A. L. Gilkey.

The will of Mrs. A. L. Gilkey is as follows:

"Forney, Texas,
Jan 26 – 1937

Mrs. A. L. Gilkey's Will

T O Gilkey owns a half inerst in all of the live stock, at my death I will him all of my inerst in them, and all of my persnal property, as long as he lives. If his wife Maud Ball Gilkey out lives him, at her death all of the property must go back to the Gilkey's heirs. This is my Will T O Gilkey executor without Bond.

Mrs. A L. Gilkey."

On trial to the court without a jury, judgment was entered decreeing that by said will the testatrix (1) bequeathed to T. O. Gilkey all of her interest in her livestock; (2) devised a life estate in all of her other property, real, personal and mixed, of every kind and character, to T. O. Gilkey, and, in succession, to Maud Ball Gilkey, wife of T. O. Gilkey, in case she survives her said husband; and (3) bequeathed the remainder in all her property, except the livestock, after the termination of the life estate of the devisees T. O. Gilkey and Maud Ball Gilkey, to the heirs-at-law of the testatrix as they shall exist at the time of her death. In the judgment the trial court expressly found that by the language in the will "all of my personal property", the testatrix meant all of the property personally owned by her, consisting of all of her interest in real estate as well as her personal property; in other words, the court makes the term "personal property" mean both real and personal. It is from this judgment and finding that appellants file this appeal.

There is but one controlling issue in this appeal; namely, does the use of the expression in the will "all of my persnal property" create an uncertainty, doubtful or ambiguity as to give rise to the need or room for construing the will or for resorting to technical rules of construction by resorting to extraneous parol evidence?

The general rule in the construction of a will is that where there is no latent or patent ambiguity or uncertainty, parol evidence of testator's declaration made prior or subsequent to its execution is inadmissible to aid its construction; and where the terms are clear, exact and specific, it is not competent to prove the testator's declaration to explain his intention or to explain the construction to be made of certain words used. Martin v. Brosig, Tex.Civ.App., 113 S.W.2d 279; Cragin v. Frost National Bank, Tex.Civ.App., 164 S.W.2d 24; Hays v. Harter, Tex.Civ.App., 177 S.W.2d 797.

"A court may not indulge in conjecture or inference as to the probable intention of a testator, nor may it recognize a testamentary intention that is not evidenced in the writing, even to avoid a hardship in a particular case. On the contrary, the testator must be presumed to have said what he meant to say and to have meant what he said in his will." 44 Tex.Jur., p. 683. Thus, in absence of ambiguity, it is from the words of the will that the testator's intention is to be deduced. Even if testator's actual intention can be shown by parol evidence, or by a written instrument which is not executed in form and manner required by law with reference to wills, no attention can be paid to such extraneous evidence for purpose of construction to such intention. The statutes generally, which regulate the execution of wills and which prescribe formalities for the purpose of preventing fraud, perjury and forgery, impose such formalities for the avowed purpose of preventing

testator's intention from having any legal effect if it is not expressed in the will. Thus, in construing the will, it must be presumed that the testator understood and intended the provisions and all phrases and words therein. The question always before the mind of a court is not what should testator have meant to do, or what words did he mean to use, but what is the meaning of the words which he has actually used.

 It is suggested here that the aforesaid principles apply where the will is unambiguous; while in ambiguous instruments the court may have to go beyond the words of the will, and invoke other principles of construction. In the abstract this is true. However, it would seem that the courts must always start with the language of the will to ascertain its ambiguity. In other words, the court cannot begin by inferring testator's intention, and then construe the will so as to give effect to this intention; nor can it rewrite the will in whole or in part to conform to such presumed intention. If testator has omitted to provide for the state of affairs which he intended, the court cannot make the presumption and give effect to a probable known intention. "Oral declarations of the testator, whether made at the time of executing the will, or prior or subsequent thereto, are inadmissible for the purpose of showing his intention, * * *. However clear they may be, declarations are not admissible to establish an unexpressed intention or to show that the testator did not intend what he expressed in the will. In other words, declarations of the testator may not be received to add to, contradict or explain the contents of the instrument." 44 Tex.Jur., p. 762.

 Manifestly, the will of Mrs. A. L. Gilkey is not artistically or technically drawn. It was wholly written in her own handwriting. Evidently she was not an educated woman, but the evidence reveals that she was industrious, keen and resourceful trader, and successfully managed and controlled her property. There is no contention here that Mrs. Gilkey did not know at the time of making her will the kind, character and extent of her property. The evidence shows that at the time of her death she owned in her own right 128 acres of land, three lots in the City of Forney, and a sizeable amount of personal property including a $1,200 note, a Ford sedan, Chevrolet truck, Avery tractor, 54 head of cattle, several shares of corporate stock, household furniture and goods, various types of farm implements and machinery, and some other livestock and miscellaneous items of personal nature. She also owned a one-half community interest with her deceased husband's estate in 276 acres of land and a city lot in Forney. During the lifetime of her husband, Mrs. Gilkey maintained a separate bank account and in a different bank from that of her husband; handled her own property, real and personal, independent of her husband; and in dealing with and speaking of specific real property owned by her she often designated it as her "personal property," that is, in the sense that it belonged to her as her separate estate, restricting the term "personal property" to the context then under discussion. There is no evidence that Mrs. Gilkey ever applied the term "personal property" to real estate without speaking of a specific parcel of land as a context for the use of the term; or that she did not know the meaning of the term in its broad and general sense to include everything that is the subject of ownership, not coming under the denomination of real estate. Thus the testatrix having used the term in her will without restricting context therein, there is no room to doubt her meaning, or need of extraneous parol testimony to establish her intention, or to give the term a meaning different from that used in the will. The intention of the testatrix must be drawn from the will, and that is she intended to bestow upon her son, T. O. Gilkey, "all of her personal property" for and during his life, and, in succession to his wife, thus excluding intestacy her real estate. Whether she actually intended her real estate to pass intestate, or not, she did do so under the terms of her will; and, whether or not her will pass a life estate only in personal property which is not susceptible to such an estate, is wholly immaterial. Such may or may not be enforceable, however, she made the will—it was her will.

It is an axiomatic rule of law that if a will is plain in terms and unambiguous in meaning, courts are confined to the mere legal interpretation of the writing and the enforcement of the lawful intention of the testator; and that the mere fact that from the will the testator has not disposed of all his property, or interest therein, or that he has perhaps included property or made bequests ill-advised or against public policy or law, or created a life estate, or perpetuity in realty or personalty, courts cannot, under guise of construction, add provisions to or change the will which will prevent such intestacy, or perpetuity, or fee simple, or fee tail interest in her property.

In the instant will, we think that the expression "personal property", either taken alone or in connection with other phrases of the will, was used in its usual accepted meaning of personal property, excluding real estate. Vol. 32 Words and Phrases, Perm. Ed., Personal Property, p. 316. It could have no other meaning. R. S.1925, Art. 23, subd. 1, defines " 'Property' includes real and personal property"; hence unless a different meaning is apparent from the context, "personal property" excludes real estate. The plaintiffs do not allege in their pleadings, or offer any proof, that the expression "I will him (T. O. Gilkey) all of my personal property as long as he lives," is ambiguous, or that there is anything else in the will which makes the term ambiguous, or includes real estate; but they seek to create, over defendant's objection, ambiguity by the use of extraneous evidence, to the effect that the testatrix had in years past used the expression "personal property" to signify property owned by her personally, including realty. There is no such implication in the will and we are not empowered to add to the will that which the testatrix did not see fit herself to put into her will. We must accept that which she made, giving to her words all that the words imply and nothing more.

The findings of the trial court that Mrs. Gilkey misused the term "personal property" is pure conjecture and based solely upon parol evidence that she used the expression in speaking of certain designated real estate that she owned personally. We think the evidence was inadmissible, and the findings of the court that the term "personal property", as used in the will, included realty was error. Manifestly, there is no need or room for the construction of this will, or for resorting to extraneous evidence for construction. The will is in plain unambiguous language, and the intention of the testatrix is clearly and unequivocally expressed.

Therefore, we hold that the will bequeathes to T. O. Gilkey her one-half interest in all of the livestock that he and she shall own jointly at the time of her death; and a life estate in all of her personal property as long as T. O. Gilkey lives; and, at his death, in succession to Maud Ball Gilkey, with remainder over to testatrix's lineal descendants—heirs of her body. Hence, in accordance herewith, the judgment of the court is reversed in part and here rendered.

LOONEY, J., concurs.

YOUNG, J., dissents.

YOUNG, Justice (dissenting).

To my mind, the majority has written a will for Mrs. Gilkey that this unlettered country lady did not even dream of, much less outline on paper, by assigning a legalistic or technical meaning (and that meaning alone) to the word "persnal." Notwithstanding the strong presumption against intestacy and that, from the mere fact of making a will, the testator has presumptively disposed of his entire estate, the majority, by this rigid interpretation of the words "persnal property," and the exclusion of surrounding facts and circumstances, has arrived at the following result: (1) That Mrs. Gilkey died intestate as to 67 percent of her property (all lands); (2) that aside from the mention of testatrix's "inerst" in live stock, the will passes to her only son no more than a *life estate in personal property,* such as farm implements, household goods, a note, a $47.50 bank balance, etc., including a debt against appellants of $125; the wife,

Maud Ball Gilkey, succeeding thereto if she survives him; the remainder interest in this unique estate then going back to the "Gilkey's heirs."

On the other hand, pertinent extrinsic evidence disclosing that Mrs. Gilkey had always used the expression "personal property" as meaning property personal to her, the trial court correctly interpreted the word "persnal" in the sense this farm lady was accustomed to use it, thereby giving her will an entirely rational construction and effectuating a disposition of all property, real and personal, in full accord with her undoubted wish and desire.

T. J. Gilkey, husband of testatrix, predeceased his wife, dying without a will or administration of estate. Mrs. A. L. Gilkey had two children, T. O. Gilkey, appellee, and Roy Gilkey who survived his father but died before his mother, the testatrix. Surviving Roy were his wife, who has remarried, and four children, all appellants herein. After death of Roy Gilkey, his widow and children moved away from Forney, Kaufman County, where they had lived; T. O. Gilkey, appellee, continuing to live near his mother, they jointly owning live stock. He and his wife, Maud Ball Gilkey, helped the mother in business affairs and were kind, considerate and attentive to her. Following the death of Mrs. Gilkey on January 18, 1939, T. O. Gilkey qualified as executor of her estate without bond through the Probate Court of Kaufman County, where administration is now pending. Those who had known testatrix for many years referred to her as a "very peculiar woman." They would say that she did not and would not understand the technical terms used in law.

The following oral testimony, in substance and effect, was admitted by the trial court as having a bearing upon her use of the term "persnal property" in said will: Carl Senter, Forney banker with whom Mrs. Gilkey dealt in financial matters, recalled an instance when she was buying a brick building there, borrowing money for the purpose. It was explained that she should give a deed of trust as security, whereupon testatrix protested, mentioning the fact that she owned personal property in excess of $30,000. Witness knew that her personal property, technically speaking, at the time was inconsiderable; and, "I knew that when she said her 'personal property' she meant everything she had * * *;" also stating that in conversations with her, "as she referred to certain parts of all her real estate, she called it 'personal property.'" John Boles, Forney merchant, in renting a brick building from Mrs. Gilkey, distinctly remembered that she referred to it as her "personal property." Joe Elliott, lumber man, likewise testified to another occasion when Mrs. Gilkey was remodeling a store building, he furnishing the material, his testimony being, in part: "Q. And you asked her how to charge the account? A. She said 'That is my own personal property, charge it to me.' I know she said that was her own personal property, because I knew it was kind of an odd expression, she was kind of a peculiar woman herself, but she knew what she wanted all right."

In ruling out the testimony just mentioned, the majority proceeds upon an entirely erroneous basis: First: That intent is thereby sought to be established independently of the will; in other words, as a showing of what the testator intended to say, but did not; whereas, the testimony of witnesses Senter, Boles and Elliott bears directly on language contained in the will, and is receivable for the purpose of showing the sense in which the expression "persnal property" was used. Extrinsic evidence is, as a general rule, admissible to enable the court to arrive at a proper understanding of words used in the will; that is, to discover the sense in which the terms are employed and to apply them to the particular facts of the case. Hunt v. White, 24 Tex. 643; Adams v. Maris, Tex.Com.App., 213 S.W. 622; Jackson v. Templin, Tex.Com.App., 66 S.W.2d 666, 92 A.L.R. 873; Avis v. First National Bank of Wichita Falls, 141 Tex. 489, 174 S.W.2d 255. Second: The majority has assumed that the term used by testatrix, "persnal property," is a compound noun, with a meaning inflexible and unyielding, and referable only to property

other than real; whereas, the word "personal", used in the same connection as an adjective, very definitely means property belonging to the person,—in this instance, the testatrix. Vol. 2 Bouvier's Law Dictionary, Rawls' Third Revision, p. 2576; Webster's New International Dictionary, Second Ed. As a subject of judicial construction, the will of an unlettered testator, written by himself, is, perhaps, the most informal of all instruments. And whether Mrs. Gilkey used the expression "persnal" property in the technical sense, or attached thereto another and more consistent meaning, was undoubtedly for determination, if possible, by use of extrinsic evidence. Prof. Wigmore, Evidence, 3rd Ed., vol. 9, § 2460, in discussing the standard of interpretation in "the association between words and objects," considered with reference to the persons fixing that association, sets up four possible classes: (1) standard of the community, or popular; (2) local; (3) mutual; and (4) individual. Under sec. 2467, subject "Wills", he says: "But a unilateral act may be interpreted by the individual standard of the actor; * * * that is, after resorting to the ordinary sense of words, and the local sense of words, for provisional assistance, we are still entitled to supplant all these by the individual usage, if it appears to have been different from the others. The will is the typical and almost the only instance of a unilateral act. The sense of the testator is therefore to be the ultimate criterion of interpretation: * * * This principle is today universally conceded."

The majority concludes that the language of this testamentary instrument is in all respects clear, plain and unequivocal. To the contrary, upon close study of the will alone, the ambiguities are so numerous as to almost result in the status of no will at all. Without going beyond its "four corners", appellee's counsel suggest at least the following prima facie ambiguities: (1) What interest is T. O. Gilkey given in the live stock—full title or only a life estate? (2) Since live stock is personal property, in the technical legal sense, what did the testatrix have in mind in bequeathing "*all* my persnal property," when she had already passed to T. O. Gilkey her interest in the live stock? (3) What does Maud Ball Gilkey take, under the will, since nothing is given to her specifically, the will merely providing as to whom "all of the property" shall go on her death if she outlives her husband? (4) To what property does the testatrix refer in saying that on the death of Maud Ball Gilkey "all of the property" must go back to the Gilkey's heirs? Does she mean the live stock or the personal property, or both? Or, is there some other property (her lands) that the testatrix had in mind? (5) Who are the Gilkey's heirs? Are they the heirs of T. O. Gilkey and Maud Ball Gilkey, or either of them? Are they the heirs of testatrix and her deceased husband, or either of them? (6) As of what date are the Gilkey's heirs to be determined? Does testatrix mean (a) the date of her husband's death? (Roy Gilkey was then living and his widow would take an interest.) Or (b) at the date of her own death? (Then T. O. Gilkey has a vested remainder after his life estate and the surviving widow of Roy Gilkey has no interest.) (c) After death of both T. O. and Maud Ball Gilkey? (Then the remainder would not vest in anyone until they both died.) (7) What does testatrix have in mind in impressing a life estate upon her "persnal property", since life estates in choses in action, bonds, securities and monies are not favored? Darragh v. Barmore, Tex.Com. App., 242 S.W. 714. (8) What did testatrix mean by saying that "all of the property" must "go back to the Gilkey's heirs"? Whoever they are, they never owned it and it cannot go *back*. (9) What did Mrs. Gilkey mean by "inerst" and "persnal"? There are no such words in the English language. How is it so clear and unequivocal that she intended to use them in a technical, legal sense when (with all respect) she cannot even spell the words?

I submit that the trial court was amply warranted in admitting the evidence objected tr (inventory, appraisement and foregoing oral testimony), because of the ambiguities, both patent and latent, above suggested. "When the will is ambiguous, or when its terms are doubtful or uncer-

tain, so that the intention of the testator cannot be clearly ascertained therefrom, parol evidence is admissible to aid in the interpretation—that is, to assist the court in ascertaining the testamentary intent and in determining the meaning of words used. Similarly when the terms of the will, standing alone, are definite and certain, the existence of a *latent ambiguity* may be shown by parol evidence and the ambiguity may be removed by evidence *of like character.*" (Emphasis mine.) 44 T.J., § 184, pp. 749, 750. The same text (44 T.J.) cites numerous decisions where comparable outside facts were considered under our liberal rule of construction in cases of wills: p. 741: "* * * The court may take into consideration the fact that the instrument was prepared by a person shown to have been unlearned in the law, or by one who was not only ignorant of law but also of the correct use of language"; pp. 757, 758: "But parol evidence will not be excluded merely because it has a tendency to vary the ordinary or technical meaning of a word"; pp. 721, 722: "It is a general rule that technical words and phrases will be accorded their proper technical meaning. But this rule is relaxed in ascertaining the meaning of the terms used in wills to a greater extent than in the construction of other documents. In construing technical words, the inquiry is directed to the question whether the testator intended to use them in a technical or nontechnical sense. Certainly they will not be construed in a technical sense when such a construction would be unreasonable or would result in the testator's having done a useless thing"; p. 723: "But words which have both a legal and popular meaning may be construed in the latter sense, when it appears that the testator so intended." See sec. 160, pp. 723, 724, where a legal meaning was not attributed to legal words and phrases; for instance, in Baker v. Johnson, Tex.Civ.App., 64 S.W.2d 1037, separate property was held to mean community property. Similarly, in many cases, the word "heir" has been interpreted as in the language of laymen rather than in a technical sense; e. g., Federal Land Bank of Houston v. Little, 130 Tex. 173, 107 S.

W.2d 374, where I quote from the opinion of Judge Smedley: "Looking to the circumstances under which the will was executed to discover the meaning attached by the testator to the word 'heir' used in the will, we find: The will apparently was not made by one learned in law. J. D. Little had only a common school education and doubtless did not understand the full import of the word 'heir' in the technical sense. * * * The prevailing inclination has been away from the application of a technical rule and to the ascertainment of the true intention of the testator. Accordingly, when we are asked to give the word 'heir' a technical meaning, the natural, and we think proper, inquiry is, Did the testator intend to use the word in its technical sense? To paraphrase the often quoted language of Chief Justice Wheeler in Hunt v. White, 24 Tex. 643, 652, the intention of the testator must be ascertained from the meaning of the words in the will and from those words alone, but in order to discover the meaning attached by the testator to the words used and to apply them to the particular facts in the case, the law admits extrinsic evidence as to the situation in which the testator was placed, the state of his family, his property, and other circumstances relating to himself individually and to his affairs." (Citing authorities.)

In American Law Report Annotations (Vols. 137, p. 212, 162, p. 1138) are collected cases from California, New Jersey, New York, Pennsylvania, Maryland, Indiana and Ontario, all holding that personal property may include real property when used in a will, and that the sense in which the testator made use of the term should control in determining what passed thereunder as "personal property." Thus in Re Olsen, 1935, 9 Cal.App.2d 374, 50 P.2d 70, real property was held to pass under a provision of a holographic will drawn by a testatrix of foreign birth and unfamiliar with the English language, bequeathing all her "personal property", since such construction would prevent partial intestacy and would carry out the evident intent of the testatrix. In re Kavanagh, 1928, 133 Misc. 399, 232 N.Y.S. 308, a testator own-

ing real and personal property, by his holographic will gave to his wife all "personal property" but made no mention of his realty; the court finding that an ambiguity existed as to the thing intended to be described and that the testator intended the term personal property to include his real estate.

It will be observed that nowhere in the will is realty or real estate mentioned, nor any residue of estate; thus emphasizing the relevancy of particular testimony (Carl Senter) that when testatrix spoke of "persnal" property, "she meant everything she had." But Mrs. Gilkey's accustomed use of the term is inadmissible, say the majority; and technical construction is thereby resorted to in the conclusion that in drafting this most important document, the lands that must have given her the greatest thought and concern throughout life were not even in mind. And that the construction given is "unreasonable and would result in testatrix's having done a useless thing," is admitted in the statement (majority opinion) that "whether or not her will passed a life estate only in personal property *which is not susceptible to such an estate,* is wholly immaterial." (Emphasis mine.)

Surely it cannot be conclusively said that Mrs. Gilkey used the expression "persnal" property in the legalistic sense, when she cannot spell the word. There can be no doubt that when the will and extrinsic evidence are examined, this testatrix was using the term in the sense of property she owned personally; at the same time making it clear that she was not undertaking to involve her deceased husband's interest in the unpartitioned community.

In construing a will, the testator's intention is our first concern, and intention controls construction. Bittner v. Bittner, Tex.Com.App., 45 S.W.2d 148. In the instant case, and to that end, the extrinsic evidence above discussed is clearly admissible. The trial court's construction of this will, making testamentary disposition of all property owned by Mrs. Gilkey, should be sustained.