T. O. GILKEY, EXECUTOR, v. NOVA GILKEY CHAMBERS ET AL.

No. A-1260. Decided December 10, 1947.
Rehearing overruled January 28, 1948.
(207 S. W., 2d Series, 70.)

*Hamilton, Dyer & Shults* and *Bowyer, Gray, Thomas, Crozier & Jaffe*, all of Dallas, for petitioner.

*F. L. Henderson*, of Bryan, and *Tyson, Dawson & Dawson*, of Corsicana, for respondents.

MR. JUSTICE HICKMAN delivered the opinion of the Court.

This is an action for the construction of the will of Mrs. A. L. Gilkey, deceased. The sole question presented here is whether the effect of the will was to devise to T. O. Gilkey a life estate in the real estate owned by the testatrix at the time of her death. The will was written wholly in the handwriting of the testatrix and is in full as follows:

"Forney, Texas,
Jan 26 - 1937

Mrs. A L. Gilkey's Will

T O Gilkey owns a half inerst in all of the live stock at my death I will him all of my inerst in them, and all of my persnal property, as long as he lives. If his wife Maud Ball Gilkey out lives him, at her death all of the property must go back to the Gilkey's heirs. This is my Will T O Gilkey executor without Bond.

Mrs A L Gilkey"

The trial court construed the will as bequeathing to T. O. Gilkey all of testatrix's interest in livestock and bequeathing and devising to him a life estate in all of her other property; real, personal, and mixed. The Court of Civil Appeals, Associate Justice Young dissenting, held that the terms of the will were plain and unambiguous in meaning, and that, therefore, it was confined to "the mere legal interpretation of the writing." So interpreting it, the conclusion was drawn that the will did not create in T. O. Gilkey a life estate in the real estate. 200 S. W. (2d) 858.

Before considering the will in detail we first determine what rules of construction are applicable. The term "personal property" has a well defined meaning in law, and if that term is to be construed alone without reference to the other language of the will, then the question presented is simple. If the will simply means the same as if its only provision were, "I will to T. O. Gilkey all of my personal property as long as he lives," then there would be nothing to construe. But the problem is not that simple.

In the early history of the common law, when wills were seldom written and then only by lawyers skilled in technical legal phraseology, a strict interpretation of wills was the gen-

eral rule. But a far more liberal rule now receives almost universal recognition. This statement of the present rule is taken from 28 R. C. L. p. 224, Section 185:

"* * * But wills are, of all classes of legal instruments, least to be governed in their construction by their technical terms, and this has been held to be especially the case in this country, because wills here are most frequently drawn by persons unacquainted with legal phraseology, and ignorant of the meaning which the law attaches to the words they use. * * * Especially where a will bears earmarks of having been drawn by a layman, and not by a lawyer, the court, in the endeavor to arrive at the intent of the testator, will not view the language technically but liberally and with reference to its popular meaning."

That rule, in varying language, is announced by all of the text writers and practically all of the courts, so far as our investigation has disclosed.

"In determining whether or not certain words were used in their technical sense, the court should consider whether the drawer of the will was or was not familiar with the technical meaning of the words or terms used, construing words in their technical sense where it appears that the testator knew what that meaning was, and not placing too great emphasis on the precise meaning of the language used where the will is the product of one not familiar with legal terms, or not trained in their use." 69 C. J. p. 77, Sec. 1120.

Mr. Schouler states the rule in this language:

"Consistently with this general regard to language, technical words employed in a will are presumed to have been used in their settled legal meaning unless the contrary is manifest. And if a testator has used technical language which brings his case within some precise rule of law, that rule must take effect. But technical words are liable to other explanatory and qualifying expressions in the context which disclose the testator's actual intention; and where a different meaning is fairly deducible from the whole will, the technical sense must yield to the apparent intention. In short, the testator's intention as gathered from the will shall prevail against the technical meaning of words or phrases, so far as may consist, at least, with the rules of sound policy, and however imperfectly such intention was in a technical sense expressed." Schouler on Wills, 5th Ed. Vol. 1, pp. 590-591. To the same effect is Page on Wills, Lifetime Ed. Vol. 2, p. 878.

This liberal rule is the well-established rule in this jurisdiction. Federal Land Bank of Houston v. Little, 130 Texas 173, 107 S. W. (2d) 374; Adams v. Maris (Com. App.) 213 S. W. 622; Johnson v. Goldstein (Com. App.) 215 S. W. 840; Hassell v. Frey, 131 Texas 578, 117 S. W. (2d) 413; Avis v. First National Bank of Wichita Falls, 141 Texas 489, 174 S. W. (2d) 255. In Federal Land Bank of Houston v. Little, supra, it was held that, from an examination of the will as a whole in the light of the surrounding circumstances, the testator did not use the word "heir" in a technical sense. We quote from that opinion:

"The prevailing inclination has been away from the application of a technical rule and to the ascertainment of the true intention of the testator. Accordingly, when we are asked to give the word 'heir' a technical meaning, the natural, and we think proper, inquiry is, Did the testator intend to use the word in its technical sense?"

After holding that in order to discover the meaning attached by the testator to the words used in his will, extrinsic evidence of circumstances relating to himself and his family was admissible, the court pointed out, among others, these extraneous circumstances:

"Looking to the circumstances under which the will was executed to discover the meaning attached by the testator to the word 'heir' used in the will, we find: The will apparently was not made by one learned in law. J. D. Little had only a common school education and doubtless did not understand the full import of the word 'heir' in a technical sense."

The holding in that case was reaffirmed in Hassel v. Prey, supra.

The manner of applying the rule by this court is made clear by considering the cases just cited in connection with the case of Griffin v. Hale, 87 S. W. (2d) 497 (error refused). In the latter case it was held that "heirs" was used in a technical sense, while in the former cases it was held that "heirs" was not used in a technical sense. In each of those cases the court determined from a consideration of the will as a whole in the light of attending circumstances the sense in which the testator employed those words and grounded its decision on that determination.

In Johnson v. Goldstein, supra, it was held that in construing a will the application of the rule to accord a technical meaning to a technical word is relaxed to a greater extent than in con-

struing other instruments, and that, although a technical construction of words and phrases is, prima facie, the one that should prevail, it will not be carried to the extent of defeating the obvious general intention of the testator. What the courts seek to ascertain is the testator's intention and the meaning which he attached to his language.

■ Applying the foregoing to Mrs. Gilkey's will, we conclude that we are well within our province in declining to give a technical construction to her language, and that it is our duty to construe it according to her obvious intention as gathered from her language and the surrounding circumstances.

The facts and circumstances surrounding the execution of the will are stated by Justice Young in his dissenting opinion as follows:

"T. J. Gilkey, husband of testatrix, predeceased his wife, dying without a will or administration of estate. Mrs. A. L. Gilkey had two children, T. O. Gilkey, appellee, and Roy Gilkey who survived his father but died before his mother, the testatrix. Surviving Roy were his wife, who was remarried, and four children, all appellants herein. After death of Roy Gilkey, his widow and children moved away from Forney, Kaufman County, where they had lived. T. O. Gilkey, appellee, continuing to live near his mother, they jointly owning live stock. He and his wife, Maud Ball Gilkey, helped the mother in business affairs and were kind, considerate and attentive to her."

■ The will bears evidence of the fact that the testatrix was uneducated. It is obvious from a reading of the will that she did not understand the legal meaning of the term "personal property." If not, she could not have intended to use it in a technical sense. She willed to her son her interest in all of the livestock and all of her personal property as long as he lived. Certainly her interest in the livestock was personal property and just as certainly it was not personal property in the sence that Mrs. Gilkey employed that term in her will. In her mind, personal property did not include her interest in the lovestock, but applied to some property other than that. We are unable to discover any basis for a conclusion that she meant to use the term "personal property" to include only such property, other than her interest in the livestock, as that which falls within the legal definition of that term. Her will mentions but two classes of property, namely, interest in livestock and personal property. It seems evident to us that she employed the term "personal property" to distinguish between property which

she owned individually and that which she owned in partener-ship with her son. If that is the sence in which she employed the term, and we think it is, then she meant to create a life estate in her real estate as well as in personal property.

Many cases might be cited in which courts have construed "personal property" in some sense other than its technical mean-ing, either restricting it to include only certain peresonal effects or enlarging it to include real property. See 137 A. L. R. 212 et seq., and 162 A. L. R. 1134 et seq. We here take notice of a few of them.

From the case of In Re Olsen's Estate, 9 Cal. App., 2nd 374, 50 Pac. (2d) 70, 73, we quote:

"In the light of the foregoing rules and authorities, we believe that words 'all my personal property,' as used by the testatrix in the will before us, should be interpreted as meaning 'all my own property' or 'all my property which I own personally' and as including real property as well as what is technically known as personal property."

The reasoning of the court in the case of In Re Kavanaugh's Will, 232 N. Y. S. 308, at page 311, is especially pertinent here:

"If the decedent used the term 'personal property' in its legal sense, then the subsequent provision, 'I also give and be-queath unto my wife all money remaining to my credit in any bank or banks or which may be due me from any notes or bonds or mortgage,' was surplusage, for the former in law would have included the latter."

The holding in West v. West, 215 App. Div. (N. Y.) 285, 213 N. Y. S. 480, on the question before us is given in the syllabus in this language:

"Will drafted by laymen, giving 'all of my personal property, * * * including household furniture,' with authority to sell, and containing no other dispositive provisions, *held* intended to in-clude realty; 'personal property' being used in sense of 'my own property,' and word 'personal' will be omitted, to carry out intent."

As pointed out in Heller v. Heller, (Com. App.), 269 S. W. 771, the very purpose of a will is to make such provisions that the testator will not die intestate. Accordingly, the presump-tion is very strong that Mrs. Gilkey intended by some provision of her will to make a complete disposition of all of her property. That intention is expressed in the second sentence of her will

wherein she directed that after the death of her son's wife "all of the property must go back to the Gilkey's heirs." Conceivably the words "all of the property" could refer only to the personal property other than testatrix's interest in the livestock, as contended, but to our minds that view results from too strict an interpretation of the expression. The real estate was valued at 67% of the total value of the estate. If the testatrix did not mean to devise her real estate, then it would follow that she deliberately chose to die intestate as to two-thirds of her estate. It seems more likely to us that by the use of the expression "all of the property" the reference was to "all of the estate." Clearly, it is reasonably susceptible of that interpretation and, since it is, then, in order to prevent partial intestacy, it is our duty to accord it that interpretation.

■ It has been suggested that the effect of adopting this construction is to disinherit the grandchildren. We cannot accept that suggestion. The grandchildren are not disinherited at all. On the contrary, their inheritable interests are enlarged, subject, however, to a life estate in the Gilkey's. It is neither unnatural nor natural for a parent to will his or her estate to a child or children for life with remainder to a grandchild or grandchildren.

Under these views the conclusion follows that the will created a life estate in T. O. Gilkey to the real estate. That conclusion is drawn from a consideration of the language of the will itself in the light of the attending circumstances and surroundings without resorting to the parol evidence as to how Mrs. Gilkey had employed the term "personal property" on occasions. Since it is not necessary to a decision of this case to determine whether or not that evidence was properly admitted, we make no holding with respect thereto.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion delivered December 10, 1947.

Rehearing overruled January 28, 1948.

MR. CHIEF JUSTICE ALEXANDER, dissenting.

The sole question to be determined in this case is whether the will of Mrs. Gilkey purports to bequeath to her son, T. O. Gilkey, her personal property only, or whether it also devises to him her real property. The will is set out in full in the majority opinion, and need not be repeated here. The only material portion of the will is as follows:

"T. O. Gilkey owns a half inerst in all of the livestock, at my death. I will him all of my inerst in them, and all of my persnal property, as long as he lives."

It will be noted that the only property which the testatrix purported to bequeath to T. O. Gilkey by this will was her one-half interest in the livestock "and all of my persnal property." The phrase "personal property" is defined as follows:

"In broad and general sense 'personal property' includes everything that is subject of ownership not coming under the denomination of real estate." Black's Law Dictionary.

"The estate or property that is not real, consisting in general of things temporary or movable." Webster's New International Dictionary.

"Although popularly the term 'personal property' is used in a somewhat restricted sense to include only goods and chattels, tangible things, the subjects of personal use, in its broad and general sense it includes everything which is subject of ownership not coming under the denomination of real estate." 50 C. J., p. 760, sec. 36.

"Tangible or corporeal property is either realty or personalty, the word 'real' describing land and that which is annexed thereto, and the term 'personal' having reference to chattels, evidences of debt and chosen in action." 33 Tex. Jur., p. 937, sec. 4.

"A bequest of 'personal property' includes every form of personal property from whatever source it may be derived; that is, everything except real property." Page on Wills, Vol. 3, Lifetime Ed., p. 44, sec. 964."

It will be observed that all of the above authorities exclude real estate or land from the definition of "personal property." See also 32 Words and Phrases, p. 314. This definition of personal property has been settled by usage and sanction by textwriters and judicial decisions for more than two centuries. 42 Am. Jur. 204. It is apparent, then, that the testatrix used apt words to limit her bequests to T. O. Gilkey, and the words used necessarily exclude the idea of a bequest of land or real estate. Whatever ambiguity there may be in the will in other respects, it is, in my opinion, clear beyond doubt that it purports to bequeath to T. O. Gilkey personal property only.

There is nothing in the face of the will to create any ambiguity in this respect. The will does recite that the testatrix's son owns a half interest in the livestock and that she

wills to him her interest therein, but this is nothing more than an acknowledgment that she was not the sole owner of the live-stock; that she owned only a half interest therein, and that her interest was willed to him. Certainly there is nothing in this language which by any sort of liberalism could be construed to cover real property. The statement that "all of the property must go back to the Gilkey heirs" upon the death of Maud Gilkey, clearly refers only to the property previously covered by the will.

The testatrix is presumed to have understood her language. Where a testator uses words having a definite legal significa-tion, he will be presumed to have used them in that sense, unless a clear intention to the contrary is apparent upon the face of the will. 69 C. J. 76. In the case of Avis v. First National Bank of Wichita Falls, 141 Texas 489, 174 S. W. (2d) 255, this Court said:

"Another rule in the construction of Wills, which merits seri-ous consideration, is stated by Corpus Juris, vol. 69, p. 80, Wills, sec. 1136, as follows: '* * * where the meaning of the language used in the will has been settled by usage and sanctioned by judicial decisions, it is presumed to be used in the sense that the law has given to it, and should be so construed, unless the context of the will shows a clear intention to the contrary'."

The only protection which a testator has against having his will tampered with or misconstrued after his death is to couch it in language with well-established meaning. This is what this testatrix did in this instance, and her will should be construed as written. The fact that the testatrix was uneducated does not alter the case. She succeeded in using language with well-established meaning on this occasion, and she is entitled to have her will construed accordingly. The Court should not, under the label of liberalism, place a construction on the words of her will entirely different from their well-established meaning, and thereby thwart her purpose as expressed by her.

The trial court permitted three witnesses to testify that on three different occasions prior to the execution of the will, and wholly disconnected therewith, they had heard Mrs. Gilkey use the expression "personal property" to refer to the property (both real and personal) owned by her individually, as dis-tinguished from that owned jointly by her with others. It was upon this testimony the trial court held that the will bequeathed to T. O. Gilkey all of Mrs. Gilkey's property, both real and personal.

It is well settled that where words which have a well-established meaning are used in a will, extrinsic evidence is inadmissible to show that the testator habitually attached a different meaning thereto.

Page on Wills expresses the rule as follows:

"In determining the testator's intention, the true purpose of the inquiry is to ascertain not what he meant to express apart from the language used, but what the words he has used do express. Accordingly, when there is no dispute as to what words were written in the will, it is a fundamental principle that extrinsic evidence can not be received to show that the testator intended something outside of, and independent of such written words, to add words to those in the will, to contradict its language, or to take words away from those in the will, even though the court may believe that the actual disposition of the testator's property which results through changing circumstances was not contemplated by him." Page on Wills, Vol. 4, Lifetime Ed., pp. 622-625, sec. 1617.

"If a testator uses words which have a common, general, and unambiguous meaning, evidence of the special meaning which he actually attaches to such words is inadmissible, as are his declarations to the effect that he uses such word with such meaning." Page 670, sec. 1626, Id.

"Extrinsic evidence may not be received for the purpose of increasing, diminishing, or varying the estate or interest given by an unambiguous will, or to vary the legal effect of the language used." Page 642, sec. 1621, Id.

Schouler on Wills says:

"No extrinsic evidence, oral or written, to show that the testator habitually or when he executed that particular will used words in some peculiar, inexact, or popular sense, can be adduced for diverting words and phrases from the meaning which the language of the instrument affords unaided, or even for confirming the court in its opinion of what was truly intended; supposing of course that an appropriate gift is found in the will itself which makes good sense when applied to its surroundings." Vol. 1, p. 746, sec. 570.

See Hunt v. White, 24 Texas 643; Haupt v. Michaelis (Com. App.) 231 S. W. 706; Adams v. Maris (Com. App.), 213 S. W. 622; Hagood v. Hagood (Civ. App.), 186 S. W. 220 (writ refused); Hocker v. Piper ,Civ. App.), 2 S. W. (2d) 997 (writ refused).

If the rule were not as above stated, a testator would have no protection against perjury. The very purpose of requiring a will to be in writing is to enable the testator to place it beyond the powers of others, after he is dead, to change his will or show that he intended something different from that expressed in the will. Where he chooses language with well-established meaning to express his will, as was done in this instance, it is not permissible, after he is gone, to show that he meant something different from that expressed in the will.

It is argued that there is a presumption against partial intestacy, and if this will be construed as covering the testatrix's personal property only, it will render her intestate as of her land or real property. It may be conceded that there is a presumption that the testatrix did not intend to die intestate as to part of her estate. But a presumption may be invoked in the construction of a will only where the will is by its own terms ambiguous. 69 C .J. 132. Such a presumption has no place and cannot be invoked for the purpose of importing ambiguity. It cannot be invoked to vary the express language of a will. Kostroun v. Plsek (Com. App.), 15 S. W. (2d) 220. It will not authorize the making of a new will by the court nor the inclusion of other property that cannot be brought within the terms of the one made by the testatrix. Coleman v. Jackson (Civ. App.), 126 S. W. 1178 (writ refused). There is no ambiguity in the terms of this will as to the character of property bequeathed thereby, and therefore there is no ground for invoking a presumption for partial intestacy.

Moreover, there is a presumption of equal force that the testatrix did not intend to disinherit her heirs at law or next of kin, but intended that her property should go in accord with the laws of descent and distribution. 69 C. J., p. 97, sec. 1149; 28 R. C. L., p. 229, sec. 190; 44 Tex. Jur., p. 703, sec. 145, p. 735, sec. 170, p. 746, sec. 181; Darragh v. Barmore (Com. App.), 242 S. W. 714; McMullen v. Sims (Com. App.), 37 S. W. (2d) 141; McDonald v. Ledford 140 Tenn. 47, 205 S. W. 312. The testatrix was survived by four grandchildren, who were the children of a deceased son. It is a matter of common knowledge that frequently a grandparent's love for his grandchildren is as great as is the parent's love for his own children. The testatrix bequeathed her personal property only to the son who survived her and to his wife so long as either of them lived. We do not know why she favored her son and daughter-in-law over her grandchildren in the disposition of her personal property, nor do we know why she limited the be-

quest to personal property only. Presumably she had reasons satisfactory to herself for so doing. She may have intended that her grandchildren, who were her lawful heirs, should share immediately in the partition of her real estate. If we alter her will so as to make it include not only the personal property as provided by its terms, but her real estate as well, we will thereby cause her practically to disinherit her grandchildren, by forcing them to forgo participation in the use of the property until the deaths of both T. O. Gilkey and Maud Gilkey. We should not indulge such a presumption contrary to the unambiguous terms of the will.

In my opinion the interpretation of the will as construed by the Court of Civil Appeals is correct.

JUSTICES SMEDLEY, BREWSTER, AND FOLLEY CONCUR IN THE DISSENT.

Opinion delivered December 10, 1947.