Lawrence BERGIN et al., Appellants,

v.

Mrs. Nannie Lew BERGIN, Appellee.

No. 7012.

Court of Civil Appeals of Texas.

Texarkana.

March 4, 1958.

Rehearing Denied March 25, 1958.

Judgment Reversed July 9, 1958.

Strasburger, Price, Kelton, Miller & Martin, Thomas C. Unis, Dallas, for appellants.

Grover Sellers, Sulphur Springs, Looney, Clark, Moorhead & Mathews, R. Dean Moorhead, Austin, for appellee.

CHADICK, Chief Justice.

This suit is an action for a declaratory judgment construing the will of Edward G. Bergin. The judgment of the trial court is affirmed.

Edward G. Bergin, in 1949, in an effort to settle his affairs at death in accord with his own preference, wrote a will.[1] This he did as his own scribe and counselor; al-

[1]                    "Sulphur Springs, Texas
                            "Nov. 30, 1949.
"To Whom It May Concern:
"I, Edward G. Bergin, being of well and sound mind, desire the court to appoint my brother, Lawrence Bergin, sole executor of my estate without bond. It is my desire that I bequeath to my beloved wife the sum of $2,000.00 in cash and 180 shares of the Los Angeles Soap Company stock and what stock I may have in the Murray Gin Company of Dallas.

"Under no condition would I want either one of these stocks to be sold unless it is subject to the approval of my brother, Lawrence Bergin. In other words, I am leaving my wife a life interest in these shares and at her death I want to be left equally share and share alike to my beloved nephew, Robert P. Bortner, my beloved niece, Mary Kay Carothers, and my beloved nephews, Charles Carothers, Jr., and Chris Carothers. Also I am leaving to my wife our home at 520 Connally Street and whatever furnishings we might have in same.

"Whatever interest I might have in the Geo. A. Bergin & Sons Monument Company, I am leaving to my brother Lawrence Bergin for the reason that this is a family business and has been carried on by the Bergins for a period of 81 years and I want it to be retained in the Bergin name.

"I would like for my nephew Robert P. Bortner to be associated in this monument business with my brother, Lawrence Bergin and to carry on in the operation of this business. In memory of my father, the late Geo. A. Bergin, I would like for the style of this firm to continue to be known as Geo. A. Bergin & Sons.

"In the event that my wife sees fit to marry again I still want the Murray Gin Company stock and the Los Angeles Soap Stock to be transferred at the date for her marriage to Robert Bortner, Mary Kay Carothers, Charles Carothers, and Chris Carothers.

"Whatever interest I have in the Geo. A. Bergin estate and in my mother, Mrs. Geo. A. Bergin's estate I am leaving to my brother, Lawrence Bergin. Also it is my desire that my wife, Nannie Lew Bergin, have a monthly allowance of $100.00 a month from whatever interest I have in the Geo. A. Bergin estate and the Mrs. Geo. A. Bergin estate to be disbursed to my wife as long as she is un-married. In the event that she marries, this allowance will cease. I know that my brother, Lawrence Bergin, will see that my wife is amply taken care of.

"If I have a car at the time of my death, I want my wife to have my car.

"The two pieces of property that are in my name on Flora Street, Dallas, Texas, were purchased from funds of the Geo. A. Bergin Estate. I want these to revert back to the Geo. A. Bergin Estate. The lots that were purchased from Walker Coffey, Block No. 93, Lots 7, 9, 133, 8B and 10B Corner League and Finney Streets in Sulphur Springs were likewise purchased from funds from the Geo. A. Bergin Estate and I want these to revert to the Geo. A. Bergin Estate.

"The lot in Jefferson, Texas, on which the Diner is now located, I am leaving a lifetime interest in to my wife. Then it will revert back to the Geo. A. Bergin Estate.

"In reference to my life insurance, I want my beloved brother, Lawrence Bergin, who is executor of my estate to collect same and invest same, the revenue from said investment to be used to help take care of the $100.00 a month aforementioned allowance to my wife.

"Whatever Government Bonds I have in my name in the Sulphur Springs State Bank were purchased from funds of the Geo. A. Bergin Estate and the Geo. A. Bergin & Sons Monument Company. I will leave this matter to my brother, Lawrence Bergin, to cash in at his discretion or to be divided equally between my wife, Nannie Lew Bergin; my brother, Lawrence Bergin, the following sisters: Grace Bergin, Jennie Bergin, Julia Bergin, Mary Bergin, and Mrs. Charles Carothers; and my nephew, Robert P. Bortner.

Anyone who sees fit to contest this, my last will and testament, I want them to be cut off from participating from the benefits of this will and left the sum of $1.00.

"I wish to be buried on the Bergin family plot in the City Cemetery at Sulphur Springs. The expenses of my last illness and funeral expenses to be paid by my estate from my interest in the Geo. A. Bergin Estate.

                            "Edward G. Bergin
                    "/s/   Edward G. Bergin
"Witnesses:   /s/ J. B. Henderson
                    "/s/ Neil Henderson
"Dated this 30th day of November, 1949."

though he as not trained in the law apparently he did not seek the services or advice of a lawyer in drawing the will. Since his death, Mrs. Nannie Lew Bergin, his surviving wife, and his brother, Lawrence Bergin, whom he appointed to execute his will, have not been able to agree upon a construction of the language of the will as it applied to certain corporate stock and this suit for declaratory judgment ensued. The case was tried without the intervention of a jury on the stipulations of the parties and the trial court construed the will to vest a conditional title to the corporate stock in Mrs. Bergin. It is heartening to find that this is not one of those unfortunate cases attended by rancor and bickering arising out of intra-family dissention. In his will Edward G. Bergin spoke of his wife in endearing terms and evidenced an intention to provide adequately for her support and welfare after his death. There is no evidence of estrangement, coldness or discord between them.

Counsel on each side have presented masterly briefs and the Court is impressed that the questions to be decided are difficult and the argument is almost evenly balanced. Able counsel have been of material aid in directing the Court's attention to relevant facts and authority and have lessened the burden of work on the Court.

■ Appellants' brief in an early passage makes the observation, "that if this Will was submitted to one hundred laymen for construction not less than ninety-nine of the said one hundred people would readily state that it was the obvious intention of the Testator to give his wife only the benefit of the stock (income) until she either died or remarried," and the language used by the deceased encourages that surmise; however, analyzing the will in the light of applicable and time-tested rules of construction that result does not follow.

■ Corporate stock, which is personalty, is involved. Split ownerships of such property, such as life estates and re-

mainder interests, are not favored in law and where such property is the subject of a bequest absolute title is passed unless the will clearly and unequivocally manifests an intention to convey a lesser title. Darragh v. Barmore, Tex.Com.App., 242 S.W. 714; Wykes v. Wykes, Tex.Civ.App., 174 S.W. 2d 333, wr. ref.; McNabb v. Cruze, 132 Tex. 476, 125 S.W.2d 288, 289. This last case states the rule in clear language, as follows:

"However, it is a well settled rule that life estates in personal property are not favored. By this is meant that the first taker will be given an absolute fee, instead of a life estate, unless the language of the will clearly and unequivocally manifests a different intention. It is also well settled that as regards personal property language which usually confers a life estate, unless followed by a gift over, vest title absolutely."

A second principle of construction must likewise be given effect, it is stated in 44 Tex.Jur. 738, thus:

"Generally, the greatest estate will be conferred on a devisee that the terms of the devise will permit; and when an estate is given in one part of a will in clear and decisive terms, it cannot be cut down or taken away by any subsequent words that are not equally clear and decisive. At any rate, an estate clearly given in one part of a will cannot be disturbed by a subsequent clause which is ambiguous or uncertain in its meaning. Accordingly, a will should not be so construed as to diminish or divest an estate therein given unless such a construction is clearly required. A devise of an estate will be deemed a fee simple, unless limited by express words, and a condition which tends to defeat an estate will be strictly construed."

See also Gilliam v. Mahon, Tex.Com.App., 231 S.W. 712; and Irons v. Ft. Worth

Sand & Gravel Co., Tex.Civ.App., 260 S. W.2d 629, wr. ref., n. r. e.

The second sentence of the first paragraph of the will which reads, "It is my desire that I bequeath to my beloved wife the sum of $2,000.00 in cash and 180 shares of the Los Angeles Soap Company stock and what stock I may have in the Murray Gin Company of Dallas," bequeathes the Los Angeles Soap Company stock and the Murray Gin Company of Dallas[2] stock to Mrs. Nannie Lew Bergin in clear, unequivocal and unambiguous language. Standing alone it clearly bequeathes an unfettered absolute title to the stock. On the basis of the authorities cited, the title conferred by the first paragraph may be reduced to a defeasible life estate only if there are subsequent provisions of the will so providing which are as clear and unequivocal as the provisions of the first paragraph, and the dignity of Mrs. Bergin's title can not be lessened if the subsequent provisions are "ambiguous or of doubtful meaning." If there is doubt as to the effect of the subsequent provision, the doubt must be resolved in favor of an absolute title in Mrs. Bergin.

■ Subsequent provisions of the will are considered to determine if the title is diminished in any way. The first sentence of the second paragraph is: "Under no condition would I want either one of the stocks to be sold unless it is subject to the approval of my brother, Lawrence Bergin." In considering this sentence it should be noted that nowhere in the will is title to the stock placed in trust with Lawrence Bergin or any one else for the use of Mrs. Bergin. It seems entirely reasonable that Mr. Bergin, the layman, having in the preceding sentence unconditionally given the stock to his wife, in the next sequence of his mental processes have thought it necessary that she have disinterested advice before disposing of the stock and his thought turned to his brother, Lawrence.

This sentence and the one preceding it are in harmony and envisions Mrs. Bergin with power to sell the stock with the approval of Lawrence Bergin. If it was intended by later provision of the will that she have a life estate only in the technical sense, she would have no power of sale. A life tenant in stock of this nature, in the absence of such power expressly given, has no right to sell more than the life estate in the stock; see Benson v. Greenville National Exchange Bank, Tex.Civ.App., 253 S.W.2d 918, wr. ref., n. r. e.; 28 Tex.Jur. 62–63. On the other hand, a grant of absolute title to the stock or title defeasible on the happening of a subsequent event, such as marriage, would carry with it a power of sale, hence this provision limiting that power would seem to be confirmation that an absolute title was intended to be bequeathed Mrs. Bergin in the first paragraph. It reasonably appears that Mr. Bergin understood that the interest in the stock he gave in the first paragraph carried with it the full power of sale and he undertook to limit such power. The validity of the restriction will be discussed subsequently.

■ Going further, the second sentence of the second paragraph of the will reduced the absolute title granted by the language of the first paragraph to a life estate if any provision does. That sentence reads:

"In other words, I am leaving my wife a life interest in these shares and at her death I want them to be left equally share and share alike to my beloved nephew, Robert P. Bortner, my beloved niece, Mary Kay Carothers, and my beloved nephews, Charles Carothers, Jr., and Chris Carothers."

This language must be analyzed to determine if it meets the "clear and unequivocal" test of bequeathing a life estate with a gift over as required by the rules stated in Darragh v. Barmore, supra; Wykes

2. Murray Company of Texas, Inc., is the correct corporate name of the company issuing the stock.

v. Wykes, supra; and McNabb v. Cruze, supra. Mr. Bergin used the words "life interest," but as a layman it is doubtful that he knew the technical meaning of such words and as the courts have frequently pointed out, see Gilkey v. Chambers, 146 Tex. 355, 207 S.W.2d 70, it cannot be deemed that he used the words in the same precise and technical sense that such words might have if they were used by an attorney. Countering the theory that the words were used in the technical sense is the direct conflict it would cause with the power of sale recognized and confirmed to repose in Mrs. Bergin in the preceding sentence of the will just discussed in the paragraph next above. To give substance to such theory of technical use creates an ambiguity, while viewing the language of the sentence as meaning in the layman's view that if the stock was still on hand at the end of Mrs. Bergin's life, he wanted her to leave it to those he designated, avoids a conflict. In either event, Mrs. Bergin would take an absolute title unless the same be lessened by later provision of the will, because if no technical life estate was intended, the gift of a life interest fails, or if such life estate was intended, a conflict is created with the authority to sell given in the first sentence and the resulting ambiguity causes it to fail as the gift does not meet the requirement that the intention be manifest in clear, decisive and unambiguous language.

For the moment disregarding the foregoing interpretation and treating the language as capable of vesting a life estate, the will cannot be said to reduce Mrs. Bergin's interest in the stock to a life estate, unless it can be said that the words "I am leaving my wife a life interest" are followed by a gift over. The Supreme Court said in McNabb v. Cruze, supra: "It is also well settled that as regards personal property language which usually confers a life estate, unless followed by a gift over, vests title absolutely." Again, an anaylsis of the language used is called for. The testator said only that at his

wife's death he "wanted" the stock "to be left" to certain named nephews and a niece. Although the word "want" is sometimes held to be directory, its connotation may be precatory and commonly that is its connotation to laymen. In Brannon v. Morgan, Tex.Civ.App., 106 S.W.2d 841, wr. dism., the testatrix in a will used the word "request" just as Mr. Bergin used the words "want" and "desire" repeatedly in his will. In that case the court held that as the word "request" was used in a precatory sense no sufficient gift over was shown to be intended which would carve the husband's interest down to a life estate. In his will Mr. Bergin showed no hesitancy to use positive mandatory language in making bequests. Illustrative is the lot in Jefferson, Texas, which he directs will revert back to the George A. Bergin estate at the end of the life estate and is in sharp and striking contrast to the language used in disposing of the corporate stock. In Young v. Griffin, Tex.Civ.App., 292 S.W. 2d 376, wr. ref., n. r. e., the word "desire" was held to be precatory and not of sufficient force as there used to reduce a fee simple title to a life estate. In Wykes v. Wykes, supra, the will under discussion had the following provision:

"The foregoing is bequeathed to my beloved wife Annie, during her lifetime, or so long as she retains my name, but should she prefer to marry again and become the wife of another or should she die, my express wish is that everything shall revert to my children, all equal parts."

The word "wish" would appear to be comparable to the word "want" in this case while the provision "shall revert" appears to be more forceful than the words "be left to" used by Mr. Bergin. Notwithstanding the seeming strength of the words "shall revert," the Court of Civil Appeals held the wife received an absolute title to personalty, and not a life estate, and the Supreme Court refused a writ of error without notation. It would logically seem that if a provision that upon the death of his

wife the testator "wishes" that property "shall revert" does not limit an absolute title granted in the first portion of a will, then it should not be held that such a limitation is effected by provision that upon the death of the wife the testator "wants" the property "to be left to" named nephews and a niece. In other portions of his will, this "wants to be left" language is not used—in some parts he specifies how he was "leaving" the property. In paragraph three he says he is "leaving" his interest in the George A. Bergin & Sons Monument Company to his brother, Lawrence Bergin. Paragraph six states he is "leaving" his interest in his parents' estate to Lawrence Bergin. In paragraph nine he is "leaving" his wife an interest in property in Jefferson, Texas. Likewise in paragraph 2 of the will he says he is "leaving" his wife a "life interest" in the stock, but in the same sentence he changed his phraseology and said—not that he was "leaving" anything to the three nephews and the niece—but rather that upon his wife's death, "I want" the stock "to be left to" the named nephews and niece. From this it would appear that when Mr. Bergin desired his will to confer an immediate interest upon a devisee or legatee he attempted to do it by employing the term "leaving." It appears reasonable that when he departed from such language and used the term "want" and "to be left to" he had a different intention and shade of meaning in his mind. This fortifies the conclusion that the will did not intend to vest any title in the nephews and the niece, but if they were ever to obtain any interest, it would be derived through Mrs. Bergin's gift made in fulfillment of her husband's wish, or as later shown upon her remarriage while still owning the shares. It appears that the nephews and niece have no vested remainder in the stock and such interest is essential to the gift over under the authorities cited. The interest of Mrs. Bergin is not reduced by the second sentence of the second paragraph.

In summing up, a consideration of the language used thus far, a construction of the will that would impute an intent to confer a life estate only upon Mrs. Bergin fails for two reasons. The first, a construction that a life estate in the technical sense was not intended prevents a conflict and the resulting ambiguity. This is in harmony with the condition subsequent created by the remarriage provision yet to be discussed. And, second, construing the language "want" and "to be left to" strictly as the authorities require, such language is undoubtedly precatory in the light of the phraseology of the entire will and does not meet the requirement that the gift over be in clear and decisive terms.

The foregoing conclusions find support in a more detailed consideration of the will and the circumstances surrounding it. The will does not indicate that Mr. Bergin contemplated his wife's living standards or situation in life should be lowered after his death. He left all of his interest in the George A. Bergin & Sons Monument Company to his brother, Lawrence Bergin. He also left Lawrence Bergin his interest in their parents' estate, subject to a monthly payment of $100 to Mrs. Bergin. Besides this monthly payment, he left Mrs. Bergin a home and a life interest in a small lot in Jefferson, an automobile (if he had one at his death) and the interest in corporate stock. In addition he states in his will, "I know that my brother Lawrence Bergin will see that my wife is amply taken care of". From what source did Mr. Bergin intend that his brother would get the means to see that Mrs. Bergin be amply taken care of? Ordinarily the home is not revenue-bearing, he limits the amount to be paid from his interest in the Bergin estate to $100 per month, the automobile could scarcely be considered a source of revenue. This leaves only the stock in question as an additional source for the care of Mrs. Bergin. Clearly, Mr. Bergin wanted Mrs. Bergin to have the income from that stock until her death or

remarriage. All parties are in full agreement as to that. Mr. Bergin being a man with considerable business affairs was aware that corporate stock fluctuates in value, and that most enterprises go through periods when profits are small or non-existent and fail to produce dividends for stockholders. The power to sell the stock was the only means by which it could be assured that Mrs. Bergin's needs could be met beyond those which his fairly modest outright legacy to her would provide; and as previously discussed, the power of sale was expressly recognized in the will. These considerations are in harmony with the construction heretofore stated.

Mr. Bergin, apart from the language already discussed and construed, wrote in his will: "In the event that my wife sees fit to marry again I still want the Murray Gin Company stock and the Los Angeles Soap Stock to be transferred at the date for her marriage to Robert Bortner, Mary Kay Carothers, Charles Carothers, and Chris Carothers." This provision of the will containing the expression "to be transferred at the date for her marriage" seems to have intended that a conditional ownership be conferred on Mrs. Bergin. This interest is sometimes referred to as a "base fee," "determinable fee", "qualified fee", "fee subject to a shifting devise", "fee subject to an executory limitation", "fee subject to a conditional limitation." All such terms have the same meaning. This opinion will not be lengthened to discuss this conclusion in detail. The authorities supporting such construction are McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412; and Harrell v. Hickman, 147 Tex. 396, 215 S.W.2d 876. Mrs. Bergin is vested with an ownership of the shares which will terminate if she remarries before making disposition of them.

Brief consideration is now given to the attempted restraint on Mrs. Bergin's power of alienation of the stock contained in the first sentence of the second paragraph wherein Mr. Bergin wrote "under no condition would I want either one of these stocks to be sold unless it is subject to the approval of my brother, Lawrence Bergin." Discussion in detail is omitted because the authorities are very clear that if an attempted restraint is coupled with the bequest of an absolute or conditional fee title, such restraint is void. Frame v. Whitaker, 120 Tex. 53, 36 S.W.2d 149; Pritchett v. Badgett, Tex.Civ.App., 257 S.W.2d 776, wr. ref.; 21 Cor.Jur. 923. Having concluded that the bequest gave a conditional fee ownership to Mrs. Bergin, this restraint is void.

Discussion of appellants' Point 5 is omitted because it is not necessary under the disposition made of this appeal, and because it appears to be a matter of law and public policy which the Supreme Court may determine on its review if this Court is found to be in error.

Having considered appellants' first four points and finding the judgment of the trial court to be correct, appellants' points are respectfully overruled, and the judgment of the trial court is affirmed.

Affirmed.

FANNING, J., concurring.

On motion for rehearing.

Rehearing denied.

DAVIS, Justice (dissenting).

After a more careful study of the will and the law, I am convinced that we erred in affirming the judgment of the trial court in this case, and now record my dissent. If we follow the principle of law as announced in Smith v. Ricks, Tex.Civ.App., 308 S.W.2d 941, 949, n. w. h., the judgment of the trial court cannot stand. There the court stated:

"In construing wills the cardinal rule to be followed is to seek and enforce the intention of the testator; and if the intention is not clearly ex-

pressed by the particular language used, it may be determined by looking to the whole of the instrument, viewed in the light of the circumstances surrounding the testator at the time the language was used in the execution of the will. Guilliams v. Koonsman, 154 Tex. 401, 279 S.W.2d 579; First Methodist Episcopal Church South v. Anderson, Tex.Civ.App., 110 S.W.2d 1177, error dism.; Hassell v. Frey, 131 Tex. 578, 117 S.W.2d 413; Kennard v. Kennard, Tex.Civ.App., 84 S.W.2d 315, error dism."

In this case, when the will as a whole is construed, there can be no doubt but that Mr. Bergin intended to leave to Mrs. Bergin only a life estate in the stocks and bonds; and, this life interest was definitely followed by a "gift over."

The judgment of the trial court should be reversed and rendered.