HAMITER, Justice.
 

 The dispute in this cause, which was tried on a stipulation of counsel and documentary evidence, concerns certain United States Series G Savings Bonds of an aggregate face amount of $167,500 acquired by Charles E. Bynum and his wife, Mrs. Bella Conner Bynum, both of whom are now deceased.
 

 The bonds were purchased during the existence of the community of acquets and gains between Mr. and Mrs. Bynum (some in February, 1943 and the remainder in March, 1946) and were paid for with community funds. Mrs. Bynum handled the purchases from the United States Government, Mr. Bynum having been physically disabled from and after the year 1942, she “acting for herself, her husband, Charles E. Bynum, and the community of acquets and gains existing between them.”
 

 
 *965
 
 Registered and issued in co-ownership form, the bonds were made payable to “Charles E. Bynum or Mrs. Bella Conner Bynum”. According to the governing regulations of the United States Treasury Department (Department ■ Circular No. 530, as revised) a bond so registered and issued will be paid or re-issued (insofar as pertinent here) as follows:
 

 “(a) Payment during the lives of both coowners. — During the lives of both coowners the bond will be paid to either coowner upon his separate request without requiring the signature of the other coowner; and upon payment to either coowner the other person shall cease to have any interest in the bond. The bond will also be paid to both coowners upon their joint request, in which case payment will be made by check drawn to- the order of both coowners in the form ‘John A. Jones and Mrs. Mary C. Jones’, and the check must be endorsed by both payees.
 

 «* * * * *
 

 “(c) Payment or reissue after the death of one coowner.. — If either co-owner dies without the bond having ■been presented and surrendered for payment or authorized reissue, the surviving coowner will be recognized as the sole and absolute owner of the bond •and payment or reissue, as though the bond were registered in his name alone, will be made only to such survivor.
 

 % * *
 

 “
 
 * * * * * *
 

 “(e) Payment .or reissue after the death of the surviving coowner. — If a surviving coowner who becomes solely entitled to the bond under the provisions of subsection (c) of this section, dies without having presented and surrendered the bond for payment or authorized reissue, the bond will be considered as belonging to his estate and will be paid or reissued accordingly * *
 

 After the bonds were acquired by Mr. and Mrs. Bynum they were placed in a safety deposit box in the Central Savings Bank & Trust Company of Monroe, to which both persons had access, and therein they have since remained.
 

 Mrs. Bynum died on July 24, 1948. Surviving were her husband and several nieces and nephews, but no- ascendants or descendants. She left a last will and testament, olographic in form and which has been admitted to probate,- bequeathing all of her property to the nieces and nephews.
 

 Mr'.
 
 Bynum’s death occurred
 
 March 7,
 
 1950. Only collateral heirs survived him. In an olographic will he had designated his mentioned wife and a daughter, issue of a former marriage, as-legatees; but since they predeceased him the testamentary dispositions are ineffective.
 

 A one-half interest in the bonds was inventoried in each of the two successions •which, at that time, were being handled by the same attorneys. Later, these attor
 
 *967
 
 neys voluntarily withdrew as representatives of the Charles E. Bynum succession.
 

 Following his appointment as administrator of the Succession of Charles E. Bynum, and in that capacity, Lewis C. Slater made demands on the executrix of the Succession of Mrs. Bella Conner Bynum and on Mrs. Bynum’s legatees for the relinquishment of all interests in the bonds. When they refused he and the collateral heirs of Charles E. Bynum instituted this action against them to recover the entirety of the bonds, praying that plaintiffs be recognized as the sole owners thereof.
 

 Defendants, in their answer, asked that they be recognized as the owners of an undivided one-half interest in the bonds or, in the alternative, that they have judgment in reconvention “in an amount equal to one-half of the value of said bonds at date of death of Charles E. Bynum, with legal interest from said date to date of settlement.”
 

 Trial of the cause resulted in a judgment which favored plaintiffs to the extent of recognizing and decreeing that Charles E. Bynum was, at his death, the owner of the bonds. However, the judgment also decreed, on the reconventional demand, that defendants have recovery from the plaintiffs of one-half of the value of the bonds at the date of death of Mrs. Bella Conner Bynum, or as of July 24, 1948. The court further ordered the costs divided equally between plaintiffs and defendants, but it made no award as to legal interest.
 

 Plaintiffs appealed from the judgment. In an. answer to the appeal defendants have asked, to quote from the brief of their counsel, “that the judgment of the lower Court be amended so as to award appellees Interest from date of dissolution of community or from date of judgment by the lower Court and to tax all Court costs against plaintiffs.”
 

 As before shown the bonds in question were registered and issued in the names of the two decedents as co-owners and made payable to “Charles E. Bynum or Mrs. Bella Conner Bynum”. However, they are subject to the provisions of the United States Treasury Department regulations (above quoted) which state that on the death of a co-owner the survivor will be recognized as the sole and absolute owner of the bonds and payment or re-issue will be made only to such survivor or, following his death, to his estate. And it was because of these provisions, together with the fact that Mr. Bynum survived Mrs. Bynum, that the trial court recognized and decreed such survivor to be the owner at the time of his death. To this portion of the judgment no objection is urged by any of the litigants.
 

 Appellants complain of the granting of judgment on defendants’ reconventional demand for one-half of the value of the bonds at, the death of Mrs. Bynum and contend that they are entitled to complete ownership thereof free of any claims. Recognizing that the bonds were purchased with community funds they take the position that
 
 *969
 
 Mrs. Bynum, in making the purchase, acted for herself with respect to her vested one-half of the community and consummated with the United States a contract which, under the Federal laws and the Treasury Department regulations, effected a disposition mortis causa in favor of her husband with the result that on her death in 1948 the ’bonds became his property in their entirety.
 

 The stipulation of counsel does recite that Mrs. Bynum acted for herself in handling the ■ purchase; but it states also-that she acted for her husband and the community of acquets and gains. More than likely she was serving primarily as the community’s representative, particu’arly since its funds were being used and the husband, or the head and master of the community, was at the time physically incapacitated to act. Nevertheless, assuming that Mrs. Bynum could and did act individually with respect to her community one-half interest in the funds invested, we fail to find anything to- evidence a clear and definite intention on her part to donate her portion of the investment to the husband in prospect of death — an essential for our concluding as plaintiffs would have -us do. The bonds themselves do not suggest that intention, they having been registered and issued on the described co-ownership form. Neither does it appear that a donation mortis causa is contemp’ated by the appropriate Treasury Department regulations which formed a part of the contract to purchase. True, they do state that on the dea'h of one co-owner the bonds will be paid to the survivor or to his estate. On the other hand they also provide that if the co-owners die in a common disaster, and it cannot be determined who died first, the bonds will be considered as belonging to both estates. Manifestly, these regulations, as has been previously said by this court, were designed solely to facilitate the Government, by providing a simple method for the payment of savings bonds, so that it would not be subjected to- the inconvenience and delays attendant to the settlement of conflicting or disputed claims.
 

 For the success of this action plaintiffs rely principally on Winsberg v. Winsberg, 220 La. 398, 56 So.2d 730, in which we held that the purchasing of the savings bonds there involved, pursuant to a contract with the Federal Government, had resulted in a disposition of property in prospect of death. But those bonds, of the beneficiary type and registered and issued on the recognized beneficiary form in the name of one person —the purchaser, specifically recited that they were payable on the purchaser’s death to another — a designated beneficiary. And the payable on death and designated beneficiary clause, as contained'in those bonds, was alone responsible for our holding that the purchaser had made a donation mortis causa. Unlike the beneficiary type, the co-owner bonds here designate no one to whom payment is to be made on death and do not contain any language otherwise indicative of-an intention to effect a gift.
 

 
 *971
 
 Likewise inapplicable is Succession of Geagan, 212 La. 574, 33 So.2d 118, which also involved beneficiary type savings bonds. Therein, the named beneficiary was recognized as the owner of the bonds, in accordance with the payable on death clause and the purchaser’s contract with the Federal Government, subject to the claim of the purchaser’s widow for one-half of the appraised value thereof which represented her community interest in .the funds that were used in making the purchase.
 

 Co-owner bonds, like those under consideration here, were in dispute in Succession of Land, 212 La. 103, 31 So.2d 609. They had been purchased by Mrs. Willie A. Land; were made payable to her or her daughter, Mrs. Elizabeth Land Triplett; and were governed by the Treasury regulation that on the death of one of the co-owners the survivor would be recognized as the sole and absolute owner. Following Mrs. Land’s death a controversy over the bonds (as well as over considerable other property of the decedent) developed between the mentioned daughter and a son. In resolving it we observed: “The district court gave full force and effect to the laws and regulations governing United States War Savings Bonds, and recognized Mrs. Triplett as the owner of these bonds, but reserved the right of John R. Land, Jr., to claim his full legitime and to claim collations because of these gifts. We find no error in this ruling.” These observations might prompt the* argument that by them we were recognizing that a donation mortis causa resulted from Mrs. Land’s purchasing of the co-owner bonds. But the argument would be ineffectual because the opinion clearly discloses that the daughter was otherwise entitled to ownership of the bonds, subject to certain legal rights of the son, all of Mrs. Land’s property having been bequeathed to her in a last will and testament.
 

 Therefore, our holding herein is that the contract of purchase in question did not evidence a gift to Mr. Bynum in contemplation of death, and that the district court correctly granted to the defendants, on their reconventional demand, a judgment against the plaintiffs for one-half of the value of the bonds.
 

 Any other conclusion, obviously, would greatly endanger the recognized right of the wife to make a disposition by testament of her vested one-half interest in the community property. Thus, a husband could invest the community funds or property in United States savings bonds of the co-ownership type and, on outliving his wife, would become the sole owner of her interest, subject only to the legal rights of forced heirs if there be any.
 

 With reference to their answer to the appeal, appellees have not assigned any good reasons (either orally or in brief) for our amending the judgment'so as to award them legal interest and to tax the entire costs of the.district court against the plaintiffs, and we are aware of none. The re
 
 *973
 
 quested amendment, hence, will not be decreed.
 

 For the reasons assigned the judgment appealed from is affirmed.