Ralph W. SMITH et al., Appellants,

v.

D. H. RICKS et al., Appellees.

No. 13127.

Court of Civil Appeals of Texas.

Houston.

Dec. 19, 1957.

Rehearing Denied Jan. 9, 1958.

John L. Compton, John J. O'S. Heyburn, Houston, Strong, Baker & Compton, Houston, of counsel, Wilson & Wilson, Wichita Falls, of counsel, for appellant.

J. Edwin Smith, C. O. Ryan, Houston, attorneys; Smith & Lehmann, Kelley & Ryan, Houston, of counsel, for appellee.

WOODRUFF, Justice.

The appellants, Ralph W. Smith, Lloyd Earl Smith, Gordon Storrs, and Iona Schuldt joined by her husband Paul Schuldt, as sole surviving heirs of Anna Fredericka Dooley, deceased, and J. H. Schnell, Administrator of the Estate of Anna Fredericka Dooley, Deceased, instituted this suit in the District Court of Harris County against D. H. Ricks and wife, Viola Ricks, individually and as trustees and residuary devisees under the will of John Michael Dooley, deceased, and also against D. H. Ricks in the capacity of Administrator with will annexed of the Estate of John Michael Dooley, Deceased, and as Guardian of the person and estate of Anna Fredericka Dooley, a person of

unsound mind. By this action the plaintiffs sought a construction of the will of John Michael Dooley and a declaratory judgment determining the ownership of certain property listed in the estates and the rights and the interests of the parties thereto under said will. From a judgment adverse to them, appellants have perfected this appeal.

Upon the trial of the case in the District Court without a jury, the proof consisted entirely of documentary evidence supplemented by stipulations of counsel; however, it may be fairly deduced from the record that prior to December 25, 1952, John Michael Dooley and Anna F. Dooley were an elderly couple who had been married for more than thirty-two years. How much longer cannot be stated with accuracy. They had no children and apparently, from the valuation placed thereon in the inventories of their estates, lived in a very comfortable home in one of the better sections of Houston. On the above mentioned date John Michael Dooley executed a holographic will, the construction of which is one of the issues in this case. It read as follows:

"December 25th, 1952

"To whom it may concern:

"That I John Michael Dooley, do hereby make and publish this as my will and testament.

"I direct that my body be buried in a Christanlike manner in a Local cemetery.

"I give devise and bequeath in trust unto D. H. Ricks and Viola Ricks of 1706 Morse St. Houston Texas as trustee's all of my estate both real and personal, wherever same may be situated, to be held and used by said Trustee's for the purpose hereinafter named. The mental and physical condition of my wife, Anna F. Dooley is such according to her doctors that she will never again be able to care for herself, or to conduct any kind of

business affairs. With Sincere desire. Should she survive me, to see that she is properly cared for so long as she should live. I hereby name and designate D. H. Ricks and Viola Ricks of Houston, Texas as trustee's and direct they use the income from sale of my estate for the maintenance and support of my wife, and not placed in a State institution. Upon the death of my wife if any portion of the estate remains after the payment of expenses then I give and bequeath all of the remainder of my estate to D. H. Ricks and Viola Ricks.

"(signed)
"John Michael Dooley."

John Michael Dooley predeceased his wife on April 24, 1953. Thereafter D. H. Ricks offered his will for probate in Harris County, Texas, and it was so admitted on May 13, 1953. On the same day D. H. Ricks duly qualified as administrator with will annexed of the estate of John Michael Dooley and filed an inventory and appraisement, setting forth certain properties constituting the community property of the decedent and his surviving wife, Anna Fredericka Dooley. On July 22, 1953, D. H. Ricks, upon his application, was duly appointed and qualified as guardian of the person and estate of Anna Fredericka Dooley, a person of unsound mind, pursuant to an order entered by the Probate Court of Harris County, and thereafter filed an inventory of her property in that proceeding. On November 22, 1954, D. H. Ricks filed his final account in the matter of the Estate of John Michael Dooley, Deceased, which was approved by the court on that date; and, on June 4, 1955, D. H. Ricks, as guardian of the Estate of Anna Fredericka Dooley, filed his annual account, which is still pending on the docket unapproved. Anna Fredericka Dooley died intestate in Houston on January 20, 1956, and left the appellants, with the exception of J. H. Schnell who is the administrator of her estate, as

her sole heirs-at-law. On February 14, 1956, D. H. Ricks filed his final account in the guardianship proceedings together with an application for discharge. Such was the status of these proceedings when this suit was instituted in the District Court by the appellants on March 8, 1956.

It will be noted that the will of John Michael Dooley contained no provision with respect to a trustee's bond, and it was stipulated on the trial of this case that neither D. H. Ricks nor his wife, Viola Ricks, ever brought any proceeding in the District Court for the purpose of having bond set for them as trustees, nor did they ever take an oath or post a bond. The record is also clear that no party interested in said estate ever instituted any proceeding to have a trustee's bond set by the District Court.

Upon trial, however, it was agreed that D. H. Ricks spent out of the two estates with the approval of the County Court approximately $13,000 for the care and maintenance of Anna Fredericka Dooley between May 13, 1953, and the date of her death, the source of such amounts being: $5,000 from the cashing of Series E. United States Savings Bonds; $2,890.30, community funds in bank accounts at the time of John Michael Dooley's death; $2,000 from life insurance which was paid to Anna Fredericka Dooley upon John Michael Dooley's death; and, $3,109.70 from Social Security payments and rentals collected for Anna F. Dooley after the death of John M. Dooley.

The inventories filed by D. H. Ricks in the John M. Dooley estate and the Anna F. Dooley guardianship proceeding listed as community property $2,890.30 in cash, as above mentioned; twenty-six Series E. United States Savings Bonds made payable to "Jack M. Dooley or Mrs. Anna F. Dooley" or "Mrs. Anna F. Dooley or Jack M. Dooley", and five $1,000 United States Savings Bonds made payable to Anna Fredericka Dooley POD to Jack Dooley, having a total redemption value as of April 24,

1953, of $22,895. In addition thereto, there was also listed in said inventory certain household furnishings, jewelry and a 1940 model automobile, together with the home located on Lots 1, 2 and part of 3 in Block No. 3 of Almeda Place Addition to the City of Houston valued at $33,500.

In the guardianship proceedings there was also listed, as the separate property of Anna F. Dooley, $2,000 in cash, being the proceeds of an insurance policy on the life of John M. Dooley, payable to Anna F. Dooley, and the west 50 feet of Lots 1 and 2 in Block 46 of Floral Heights Addition to the City of Wichita Falls, Texas, hereinafter referred to as the Wichita Falls property. In both inventories, however, it was recited that the community estate of John Michael Dooley and Anna Fredericka Dooley had an "equitable interest" in this real estate to the extent of $3,600.

Omitting other rulings by the trial court about which no contest is here made, the court rendered judgment decreeing, first, that the will of John Michael Dooley, Deceased, disposed of his one-half of the community estate which had the effect of awarding to the appellees, D. H. Ricks and Viola Ricks, as residuary devisees under his will, a one-half interest in the community property undisposed of at the time of the death of Anna F. Dooley on January 20, 1956. Secondly, it was further decreed that D. H. Ricks and Viola Ricks, as trustees under the will of John M. Dooley, were vested with discretion to determine to what extent his estate should be used for the maintenance of Anna Fredericka Dooley. Thirdly, it was held that the twenty-six United States Savings Bonds constituted community property of John M. Dooley, Deceased, and his wife, Anna Fredericka Dooley, and that a one-half interest in those bonds remaining uncashed at the time of the death of Anna Fredericka Dooley passed to the appellees, D. H. Ricks and Viola Ricks, as residuary devisees under the will of John Michael Dooley; and, fourth, the real estate referred to as the Wichita Falls property, admittedly the sep-

arate property of Anna Fredericka Dooley, was subject to a charge in favor of the community estate in the amount of $3,600.

Conclusions of law were also filed by the trial court, one of which was that the failure on the part of D. H. Ricks and Viola Ricks to institute a suit and furnish bond, as provided under Article 7425b–25 subsection L, Vernon's Ann.Civ.Tex.St., did not affect the discretion vested in them as trustees, nor did such failure affect their status as vested remaindermen under the will of John Michael Dooley, Deceased.

By appropriate points the appellants have attacked all of the foregoing rulings of the trial court.

No fraud or abuse of discretion in the handling of the trust property was asserted by appellants in the trial court, as is clearly shown by the stipulations and especially as reflected on page 65 and the sentence composed of the last two lines on page 68 and completed on page 69 of the statement of facts. However, appellants do challenge the authority of appellees under the will to exercise any discretion in determining when expenditures for the support and maintenance of Anna F. Dooley should have been made out of the estate of John M. Dooley, Deceased.

■ One of the most important issues in this case involves the ownership of the twenty-six United States Savings Bonds upon the death of John M. Dooley, one-half of which the trial court held belonged to his estate and the other one-half to Anna F. Dooley. This resulted in the trial court's rendering a declaratory judgment that a one-half interest therein passed under the will of John M. Dooley to appellees as his residuary legatees upon the death of Anna F. Dooley. Appellants assign as error the action of the trial court in holding that any interest in the United States Savings Bonds passed under the will of John M. Dooley.

It was stipulated that all of the bonds were purchased with community funds of John M. Dooley and Anna F. Dooley and were made payable as follows: "Jack M. Dooley or Mrs. Anna F. Dooley"; "Mrs. Anna F. Dooley POD Jack Dooley"; "Mrs. Anna F. Dooley or Jack M. Dooley"; or "Mrs. Anna F. Dooley or Jack Dooley".

Both the appellees and appellants take cognizance of the fact that these bonds were all purchased under the regulations promulgated by the Secretary of the Treasury of the United States as authorized by Congress (see Title 31 U.S.C. § 757c, 31 U.S.C.A. § 757c), which regulations are set forth in the Code of Federal Regulations (1949 ed.), Title 31, parts 315–318 and supplements thereto. These regulations provide in effect that with respect to a co-owner bond if either owner dies without having presented or surrendered the bond for payment or re-issue, the surviving co-owner "will be recognized as the sole and absolute owner of the bond and payment or re-issue as though the bond were registered in his name alone will be made to such survivor." Further, in the case of a beneficiary bond if the beneficiary should predecease the registered owner, the latter may present the bond for payment or re-issue. The regulations also provide that on the death of an owner of a savings bond not survived by a co-owner or designated beneficiary, the bond will be considered as belonging to his estate and will be paid or re-issued accordingly.

Appellees contend, however, that the Treasury Department Regulations are promulgated merely to facilitate the re-issuance or payment of savings bonds by the United States Government and that they do not supersede the laws or nullify the laws of the State of Texas.

They argue that the bonds having been acquired during the marriage of John M. Dooley and Anna F. Dooley with community funds, they are, under the Texas laws, the community property of the husband and wife, and one-half of them were subject to testamentary disposition of each of the spouses. They cite Article 16, Sec. 15 of the Texas Constitution, Vernon's Ann.St.; Articles 4610 and 4619, Vernon's Texas

Civil Statutes Annotated; Groesbeck v. Groesbeck, 78 Tex. 664, 14 S.W. 792; King v. Bruce, 145 Tex. 647, 201 S.W.2d 803, 171 A.L.R. 1328; and Reed v. Reed, Tex. Civ.App., 283 S.W.2d 311. These case references involve an application of the Constitutional and statutory provisions of the State of Texas prohibiting husbands and wives, during the existence of the marriage, from converting community property into the separate estate of either by contract or agreements entered into between themselves, irrespective of the means employed unless they comply with Art. 16, Sec. 15, of the Constitution as supplemented by Art. 4624a, V.A.C.S.

In further support of their contention, appellees strenuously urge upon the Court the reasoning employed in Slater v. Culpepper, 222 La. 962, 64 So.2d 234, 37 A.L.R. 2d 1216; Winsberg v. Winsberg, 220 La. 398, 56 So.2d 730. Both of these decisions follow the holdings of a minority of the courts (See 37 A.L.R.2d 1216) to the effect that irrespective of the Treasury regulations, which provide that the co-owner named in a United States Savings Bond, when predeceased by the other co-owner, will be recognized as the sole owner, nevertheless, if the bonds were purchased with community funds, the proceeds thereof remain the community property of the husband and wife under the laws so providing of the State of their residence, and the heirs or legatees of the spouse first dying may proceed in reconvention against the estate of the surviving spouse holding or collecting on the bonds for a one-half interest representing the interest of the spouse first dying.

The majority of the courts, however, follow the reasoning discussed by the late Associate Justice Smedley in Edds v. Mitchell, 143 Tex. 307, 184 S.W.2d 823, 829, 158 A.L.R. 470, to the effect that the Federal statutes "authorizing the Secretary of the Treasury to issue the bonds, subject to such terms and conditions as he may prescribe, and the Treasury regulations under which they are issued are the valid exercise of the constitutional power 'to borrow Money on the credit of the United States' (article 1, § 8, cl. 2), and that 'no state law can vary the terms of the Federal obligations or derogate from their full enforceability.'"

While it cannot be stated emphatically that our Supreme Court in Edds v. Mitchell, supra, rested its decision on the supremacy of the Federal statutes and Treasury regulations, it can be said with accuracy that its holding to the effect that the surviving beneficiary named in the five United States Savings Bonds became the sole and absolute owner of the bonds upon the death of the registered owner under a third party beneficiary contract which arose by virtue of the provisions of the Treasury regulations, necessarily gave some authoritative force to such Treasury regulations.

This decision was cited as an authority for the ruling in McFarland v. Phillips, Tex.Civ.App., 253 S.W.2d 953, writ refused, n. r. e., in which it was held that by reason of the Treasury regulations the surviving co-owner of United States Savings "or" bonds became the sole and absolute owner of the proceeds thereof to the exclusion of the estate of the deceased co-owner who actually purchased them.

Recently the Dallas Court of Civil Appeals, in Chamberlain v. Robinson, 305 S. W.2d 817, after discussing the authorization by Congress of the Treasury regulations and stating the provisions thereof which were made a part of the contract between the Federal Government and the purchaser of the bonds, held that the surviving co-owner of the United States Savings "or" bonds, pursuant to such regulations, became the sole and absolute owner thereof upon the death of the purchasing co-owner, citing McFarland v. Phillips, supra.

In McFarland v. Phillips, supra, Waltenberger v. Pearson, 81 Ohio App. 51, 77 N. E.2d 491, 496, was cited as the first supporting authority on its holding on the point under discussion. In that case the wife, without the knowledge or consent of

the husband, took community funds from the earnings of a restaurant and purchased a number of United States Savings Bonds, registering herself, Edna Thomas, and persons other than her husband (but only one in each instance) as co-owners. She placed these bonds in a lock box rented by the defendant, Charles E. Pearson, to which, however, Edna Thomas was given access. After the death of Edna Thomas, Waltenberger, the administrator of her estate, by an action in replevin which was filed against Charles E. Pearson et al., all of whom were named as co-owners in the bonds, sought to gain possession thereof. The trial court directed a verdict against the administrator and from the adverse judgment entered he prosecuted an appeal. After setting forth the Treasury regulations applicable to the purchase and payment of co-owner United States Savings Bonds, the Court of Appeals of Ohio, in sustaining the action of the trial court, said:

"These provisions, with the force and effect of law, constitute a part of the contracts by which the bonds are sold by the government and determine not only the person to whom the bonds are to be paid but also determine the property rights, as between themselves, of the parties in whose names as co-owners the bonds are registered. Consequently where, as in the instant case, bonds are registered in the manner pleaded in such defenses, they become the absolute property of the survivor of the co-owners after the death of one of the co-owners, and the executor or administrator of such deceased co-owner has no right, title or interest in them or right to the possession thereof."

In view of these decisions, we feel committed to the view of the majority of the courts, which recognizes the supremacy of the Federal statutes and the Treasury regulations in determining the ownership of United States Savings Bonds. We conclude, therefore that the able trial judge erred in holding that one-half of the bonds in issue in this case passed to the appellees under the will of John M. Dooley, Deceased.

■ By another point, error is assigned to the trial court's holding that the separate property of Anna F. Dooley referred to as the Wichita Falls property is subject to a charge in favor of the community estate of John Michael Dooley and Anna Fredericka Dooley in the amount of $3,600.

■ By a deed offered in evidence by appellants dated July 26, 1920, John M. Dooley "in consideration of $1.00 and love and affection" conveyed to Anna F. Dooley "in her own right and as her own separate property" the premises hereinbefore described as the Wichita Falls property. Immediately following the description the deed contained the following clause:

"This conveyance is made, however, subject to six vendor lien notes now outstanding against the property, premises and improvements hereinafter described. Said notes being executed by Verne M. Clopton and payable to the order of Linn A. Boyd and the payment of said notes being afterward assumed by W. I. Brashears in deed to him from Verne M. Clopton and which said six promissory notes the said W. I. Brashears has contracted, agreed and promised to pay within one year from July 2, 1920, together with all interest due thereon or to become due thereon. Said six notes bearing date July 20, 1919, with 8% interest from date until paid."

This provision was immediately followed by the customary habendum clause and a general warranty without any limitation or qualification. Among the papers of John M. Dooley were found six vendor's lien notes in the amount of $600 each, dated July 20, 1919, signed by Verne M. Clopton, payable to Linn A. Boyd or order at six month intervals, respectively, the first of which was due eighteen months after date, and recited that they were given in part

payment of the property referred to herein as the Wichita Falls property.

Appellees also offered in evidence a deed dated July 2, 1920, executed by W. I. Brashears conveying the Wichita Falls property to John M. Dooley. The warranty clause in this deed was qualified by reciting in substance that the premises were free and clear of all liens except seven vendor's lien notes against said property for $600.00 each, payable at six month intervals after one year, which were executed by Verne M. Clopton in favor of Linn A. Boyd, *"which seven notes Grantor agrees to pay on or before one year from this date."* (Emphasis ours.) Appellees further offered in evidence four partial releases of liens securing these notes, each showing the payment of one or more notes, but in none of these instruments was it shown whether John M. Dooley, Anna F. Dooley, or some other person paid the notes for which the releases were given. In addition thereto the appellees offered in evidence an unrecorded instrument executed in the name of Delta Oil & Refining Company, by W. I. Brashears, dated June 8, 1921 (almost a year after the date of the deed from John M. Dooley to Mrs. Dooley), reciting that for and in consideration of One Dollar ($1.00) and other valuable consideration paid by J. M. Dooley, said Delta Oil & Refining Company waived "any and all claims whatsoever against" the Wichita Falls property.

In a separate paragraph the instrument continues: "and also all claims in and to one Essex Sedan automobile; the said J. M. Dooley agreeing to pay and assume all indebtedness against said property; this agreement being made in compromise and full settlement of the contract entered into on the 2nd day of July, A. D. 1920, between the said J. M. Dooley and W. I. Brashears, the said Brashears acting for the Delta Oil & Refining Company."

From the language of this instrument, it is questionable whether or not J. M. Dooley assumed the payment of the notes against the Wichita Falls property. Be that as it may, it is clear that when J. M. Dooley conveyed the property to Mrs. Dooley on July 26, 1920, Brashears was obligated to pay these notes, and if J. M. Dooley undertook to assume their payment in order to effect the settlement of a dispute between himself and Delta Oil & Refining Company involving other matters, such as the Essex Sedan, it is manifest that he could not prejudice the rights of Mrs. Dooley's separate estate by releasing Brashears from his assumption and thereafter pay the notes and assert an equitable claim against the separate property or estate of Mrs. Dooley for the full amount of such payment. In any event, whatever amount was paid on these notes in effecting a settlement of the claim involving the Essex Sedan could not form the basis of a claim in behalf of the community estate against the separate property or estate of Anna F. Dooley.

The burden of proof on this issue resting squarely on appellees, we hold that the evidence is entirely too indefinite and uncertain to support the fixing of a charge in behalf of the community estate against Mrs. Dooley's separate property. Gebhart v. Gebhart, Tex.Civ.App., 61 S.W. 964. Moreover, in the absence of proof of an intention to the contrary, the fact that these notes were paid by John M. Dooley out of the community funds under the circumstances which obtain here, would, in our opinion constitute a gift from him to his wife. Paulder v. Paulder, 5 Cir., 210 F. 2d 765.

The trial court erred, therefore, in holding that the separate property and estate of Anna Fredericka Dooley is subject to a charge in favor of the community estate of Anna F. Dooley and John Michael Dooley in the amount of $3,600.

Appellants leveled several points of error to the trial court's action in allowing appellees, D. H. Ricks and Viola Ricks, a recovery as residuary devisees of any portion of the estate of John Michael Dooley

remaining upon the death of Anna F. Dooley because, they contend, John Michael Dooley, by his will, vested no discretion in the trustees to determine when his interest in the community estate should be sold for the maintenance of Anna F. Dooley; and, contending further that appellees failed to discharge their duties as trustees and thereby forfeited any right to the residuary estate when they failed to exhaust the estate of John M. Dooley before resorting to any of the estate of Anna F. Dooley. Appellants also contend that the failure of appellees to qualify by giving bond under Article 7425b–25 Subdivision L, was a renunciation of the trust and a disclaimer of all their rights as remaindermen in the trust estate.

The first of these contentions involves the proper construction to be placed upon the will of John Michael Dooley.

■ In construing wills the cardinal rule to be followed is to seek and enforce the intention of the testator; and if the intention is not clearly expressed by the particular language used, it may be determined by looking to the whole of the instrument, viewed in the light of the circumstances surrounding the testator at the time the language was used in the execution of the will. Guillams v. Koonsman, 154 Tex. 401, 279 S.W.2d 579; First Methodist Episcopal Church South v. Anderson, Tex.Civ.App., 110 S.W.2d 1177, error dism.; Hassell v. Frey, 131 Tex. 578, 117 S.W.2d 413; Kennard v. Kennard, Tex. Civ.App., 84 S.W.2d 315, error dism.

■ It is conceded that at the time John Michael Dooley prepared his will, Anna F. Dooley had been hopelessly ill, both mentally and physically, for several years. Both he and his wife were more than 70 years of age and from the terms of the will itself it is evident that he was greatly concerned about his wife's care in the event he predeceased her. He also knew that Mrs. Dooley had no close relatives in Texas who would furnish this care and attention since the appellants, who were her closest

of kin, all lived in the States of Washington, California, and South Dakota. Naturally, he was mindful of the fact that he and Anna F. Dooley owned about $23,000 in United States Series E War Savings Bonds, and had about $3,000 in cash in two accounts in Houston banks. Likewise, he knew that in the event of his death she would receive $2,000 from a life insurance policy on his life, and that she owned a piece of property in Wichita Falls.

From the valuation of $33,000 placed thereon in the inventory of his estate, it is evident that he had furnished his wife with a very comfortable home, and it is manifest by the terms of his will that he wanted to guard against her ever being placed in a state institution.

These were the surrounding circumstances when John Michael Dooley wrote his holographic will on December 25, 1952, less than four months before his death. The very essence of said trust provisions of the will is to be found in the following words of the instrument:

> "With Sincere desire. Should she survive me, to see that she is properly cared for so long as she should live. I hereby name and designate D. H. Ricks and Viola Ricks of Houston, Texas as trustees and direct they use the income from sale of my estate for the maintenance and support of my wife, and not placed in a State institution."

It is evident that the cardinal purpose and intent of the testator in making this will was to enlist the aid of trustees "to see that she is properly cared for so long as she should live," and that his wife be "not placed in a state institution." With these declared intentions in mind, we must consider whether or not the testator intended to vest his trustees with discretion in determining when and in what amounts they should use the resources of his estate for the maintenance and support of his wife in seeing "that she is properly cared for so long as she should live." We believe

that he did so intend to give them this discretion. To say that he did not so intend, but enjoined upon them the duty to first use all of the resources of his estate before permitting any expenditures out of his wife's property, would be placing a construction upon the will contrary to his expressed intention in creating this testamentary trust and would nullify his efforts to retain the good offices of the trustees "to see" that she was properly cared for for the remainder of her life and that they should see that she was not placed in a state institution.

In fact, at the time of Mrs. Dooley's death the only item of property remaining in the estate of John M. Dooley was an undivided one-half interest in the home. The remainder of his estate had been expended for her support and maintenance.

We, therefore, conclude that John M. Dooley, under the terms of his will, did vest a discretion in his trustees to determine when and in what amounts resort should be made to his estate for the maintenance and support of his widow and that the learned trial court's finding and conclusion that the trustees were vested with this discretion under the will should not be disturbed. This point of error is, therefore, overruled.

■ Appellants also contend that appellees in failing to make bond as trustees under Article 7425b–25, Subdiv. L, Vernon's Annotated Civil Statutes, could not act as trustees, and further that they renounced the trust as a matter of law, thus forfeiting all rights as remaindermen. In addition to their reliance on the statute, appellants cite the case of Lange v. Houston Bank & Trust Company, 194 S.W.2d 797, writ refused, n. r. e., decided by this Court. As the late Chief Justice W. E. Monteith, who wrote the opinion, pointed out, it is very doubtful that the Texas Trust Act of 1943 applied to that case because the will creating the trust was probated before the Act went into effect. However, on the assumption that its application might be so contended,

it was held that the failure of the trustees in that case to file a bond did not prevent their recovery of the residuary estate as remaindermen although the will appointing them as substitute trustees further provided that they should receive the residuary estate only in the event that they as substitute trustees should accept the trust and should personally see that the provisions thereof were carried out and attended to.

In this connection the pertinent language of Subdivision L, of Art. 7425b–25, of the original Trust Act of 1943, read as follows:

"Unless the instrument creating the trust provides to the contrary the law governing the giving of bond by executors shall be applicable to trustees; provided jurisdiction to fix the amount and approve such bonds is vested in the District Court."

Since the law governing the giving of bond by executors necessarily presupposes the pendency of probate proceedings, this language could very well be construed as requiring a proceeding for the fixing of a trustee's bond.

Nevertheless, Judge Monteith said that under the facts there, the "question * * * passes out of the case."

However, Subdivision L of Article 7425b–25, was amended in 1945, to read: "Unless the instrument creating the trust provides to the contrary" the trustee "shall be required to give bond * * * conditioned for the faithful performance of the duties as trustee, to be in such amount and with such surety or sureties as the District Court shall, by order entered in a proceeding brought for such purpose, direct and approve."

■ The act then provides that "if" the proceeding be brought by the person named as trustee no citation need issue but "if" the proceeding is brought by some other person interested in the estate, citation shall issue to the trustee. There is no provision even by inference as might have been contended under the original act making it ob-

ligatory on any party to bring any such proceeding to fix a bond. The act merely provides a means by which anyone "interested in the estate" may have a bond fixed by the District Court. Of course, if a bond is fixed by the court, then it is mandatory that the trustee "give" one. Appellants' contention in this regard is, therefore, overruled.

As here, it was also argued in the case of Lange v. Houston Bank & Trust Company that the substitute trustees in failing to administer the trust estate had refused to act and disclaim their rights as remaindermen, and the trial court so held. The evidence showed that they had advised the executor of the estate that they wished to assume their duties as substitute trustees and had asked that they be advised of the amount of the bond which would be required of them. Shortly thereafter the life beneficiary died before the requested information had been furnished, and this Court held that the trustees, having stated that they wanted to discharge their trust duties and would furnish bond upon being advised of the amount thereof, were entitled to the residuary estate, thus reversing and rendering the action of the trial court in denying them a recovery.

It occurs to us that if it can be contended in the instant case that appellees never entered upon a discharge of their duties as trustees, there was nothing more they could have done for the care and maintenance of Mrs. Anna Dooley other than what was being done. It must be conceded by all that it was necessary to institute the probate and the guardianship proceedings. Approximately $13,000 was spent in her care in about thirty-three months. Conceding that this money was spent by authority of the Probate Court, under the facts of this case it does not show a renunciation of the trust or a refusal to act. In fact, it might well be said that they acted under the terms of the will as well as the orders of the Probate Court. Nevertheless, there is no evidence affirma-

tively showing that they ever disclaimed by such a tacit refusal to act as amounts to an express rejection of the trust. Lange v. Houston Bank & Trust Company, supra, and the authorities cited therein.

Appellants' contention that appellees rejected the trust, thereby disclaiming all interest therein, is overruled.

That portion of the judgment of the trial court, therefore, in holding that one-half of the United States Series E. Savings Bonds passed under the will of John Michael Dooley, Deceased, to appellees, R. H. Ricks and Viola Ricks, and that the community estate of John Michael Dooley, Deceased, and Anna F. Dooley, Deceased, is entitled to a charge in the sum of $3,600 against the Wichita Falls property, which was the separate property of Anna F. Dooley, is hereby reversed and judgment is here rendered denying appellees a recovery of any of said Series E. Savings Bonds and denying the fixing of a charge against the Wichita Falls property for any amount. The remainder of the judgment of the trial court is hereby in all things affirmed.

Reversed and rendered in part and affirmed in part.