RALPH W. SMITH ET AL v. D. H. RICKS ET UX.

No. A-6701. Decided November 5, 1958.
Rehearing overuled December 31, 1958.
(318 S.W. 2d Series 439)

*Smith & Lehman, Kelley & Ryan, J. Edwin Smith* and *C. O. Ryan,* all of Houston, for petitioner, Ricks, et ux.

The Court of Civil Appeals erred in holding that Federal Treasury regulations abrogated the Texas Constitutional and statutory provisions defining separate and community property. Also, in holding that the husband's community interest in United States saving bonds vested in the co-owner of the bonds at the husband's death and did not pass under his will. Groesbeck v. Groesbeck, 78 Texas 664, 14 S.W. 792; Ohio Oil Co. v. Giles, 149 Texas 531, 235 S.W. 630; Bank of America National T. & S. Ass'n. v. Parnell, 352 U.S. 29, 77 Sup. Ct., 119.

*Strong, Baker & Compton, John L. Compton* and *John J. O'S. Heyburn,* all of Houston and *Wilson & Wilson,* of Wichita Falls, for Ralph W. Smith, et al.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

A clear statement of this case may be found in the opinion of the Court of Civil Appeals, for which see 308 S.W. 2d 941. The opinion is rather long, due no doubt to the fact that many independent questions were before the court for review. We have carefully considered all of the rulings of that court in the light of briefs filed here, and concur in each of those rulings. To place in the reports another opinion which would not vary materially from that of the Court of Civil Appeals could hardly be justified. Since, however, the case has been placed on our docket and argued orally before us, we shall write briefly on what we regard as the two principal questions presented.

■ The case calls for the construction of the holographic will of John Michael Dooley, which reads as follows:

282

"December 25th, 1952

"To whom it may concern:

"That I John Michael Dooley, do hereby make and publish this as my will and testament.

"I direct that my body be buried in a Christanlike manner in a Local cemetery.

"I give devise and bequeath in trust unto D. H. Ricks and Viola Ricks of 1706 Morse St. Houston Texas as trustee's all of my estate both real and personal, wherever same may be situated, to be held and used by said Trustee's for the purpose hereinafter named. The mental and physical condition of my wife, Anna F. Dooley is such according to her doctors that she will never again be able to care for herself, or to conduct any kind of business affairs. With sincere desire. Should she survive me, to see that she is properly cared for so long as she should live. I hereby name and designate D. H. Ricks and Viola Ricks of Houton, Texas as trustee's and direct they use the income from sale of my estate for the maintenance and support of my wife, and not placed in a State institution. Upon the death of my wife if any portion of the estate remains after the payment of expenses then I give and bequeath all of the remainder of my estate to D. H. Ricks and Viola Ricks.

"(signed)
"John Michael Dooley."

During his lifetime testator purchased with community funds a number of Series E United States Savings Bonds payable to himself or his wife, Anna F. Dooley. He predeceased her without having cashed the bonds. After her death a controversy arose between her heirs, Ralph W. Smith et al., and the trustees and residuary legatees under testator's will, Ricks and wife, regarding the ownership of the bonds remaining uncashed at the time of her death, the former contending that they belonged to them as sole heirs of Mrs. Dooley, and the latter contending that they were community property of the Dooleys, one-half of which passed to them under his will. The trial court upheld this latter contention, but the Court of Civil Appeals reversed that judgment and held that upon the death of John M. Dooley his wife became vested with the sole ownership of the bonds. Accordingly, it was adjudged that no interest in the bonds passed

to Mr. and Mrs. Ricks under Dooley's will. With this latter ruling we concur.

■ It cannot be questioned that the opinion of the Court of Civil Appeals follows the rule adopted by a majority of the courts. A number of cases from other jurisdictions are cited in the annotation in 37 A.L.R. 2d 1216 et seq. The annotation is to the Louisiana case of Slater v. Culpepper, 222 La. 962, 64 So. 2d 234, 37 A.L.R. 2d 1216, which case declined to give controlling effect to the Treasury regulations incorporated in the bonds, holding that to do so would nullify community property law of that state. While that case is the only one cited from a state having community property law, we agree with the Court of Civil Appeals that the purchase of the bonds was by a contract which created a property right,—not merely a method of payment for the convenience of the Treasury Department. There is no sanctity of the community property law above that of other types of law. To give supremacy to Federal regulations no more affects community property law than laws of descent and distribution. The solution as to the property rights of the surviving co-owner of "or" bonds rests in contract, and that contract becomes a part of the bonds. The decisions in this jurisdiction cited in the opinion of the Court of Civil Appeals, while not deciding the precise question here presented, are certainly in harmony with the majority rule followed by that court. We, therefore, approve that holding.

■ Some time after the death of John M. Dooley his surviving wife, Mrs. Anna F. Dooley, became insane, and D. H. Ricks was appointed guardian of her estate. Under orders of the probate court he spent about $13,000.00 for her care and maintenance. It is the contention of the heirs of Mrs. Dooley that the trustees under the will of John M. Dooley were not vested with any discretion to determine when and in what amount resort should be made to his estate for the maintenance and support of his widow, but were compelled to exhaust all the trust estate, if necessary, before resorting to any of the property of Mrs. Dooley which was in possession of D. H. Ricks in his capacity as guardian of her estate. Neither of the courts below upheld that contention. We would regard this question as a very serious one had we concluded that a one-half interest in the bonds belonged to Dooley's estate and passed by the will to the trustees, who were made residuary legatees under the will. But, since we have held that his estate had no interest in those bonds, the only property passing to the residuary legatees under the will was a one-half interest in the Dooley homestead. Without determining what

degree of discretion, if any, was vested in the trustees by the will, we agree with the Court of Civil Appeals that there was no breach of trust in the failure to sell the testator's one-half interest in the homestead in order to apply the proceeds thereof to the support and maintenance of Mrs. Dooley.

Finding no error in the judgment of the Court of Civil Appeals, that judgment is affirmed.

Opinion delivered November 5, 1958.

MR. JUSTICE WALKER, joined by JUSTICES CALVERT and SMITH, dissenting.

If this were the only situation that could arise involving ownership of "or" bonds purchased with community funds, there would be little reason for disagreeing with the majority holding on that question. It is my view, however, that we are now drifting into a position that will either prove untenable or will lead to inconsistent or undesirable results. This case probably represents the point of no return, and I would hold that upon the death of the husband, the wife as surviving co-owner was under a duty to account to his estate for one-half of the value of the bonds at the time of his death.

It should be observed at the outset that the Texas decisions bearing on the question are not necessarily controlling here. In Edds v. Mitchell, 143 Texas 307, 184 S.W. 2d 823, 158 A.L.R. 470, we were concerned with "p.o.d." bonds purchased by a life tenant with power of disposition. Community funds evidently were not involved in either McFarland v. Phillips, Texas Civ. App., 253 S.W. 2d 953 (wr. ref. n.r.e.), or Chamberlain v. Robinson, Texas Civ. App., 305 S.W. 2d 817, and our courts have never considered the federal regulations in the light of our laws dealing with community property and the power of the marital partners to contract with respect thereto.

At first glance, these decisions seem to point to the conclusion reached by the majority in the present case, because a uniform rule governing ownership of "or" bonds after the death of one of the co-owners is undoubtedly desirable. The difficulty is that the holding in this case cannot lead to uniform results unless we are willing to close our eyes to some of the principles that are rather deeply imbedded in the community property laws of this state. It is said by the majority that the solution as to the property rights of the surviving co-owner rests in contract. If

this be true, then the Texas law is an important consideration in determining whether ownership of the bonds is effectively vested by contract in the surviving co-owner.

Since there is nothing in our law to prevent a husband from making a contract affecting community property for the benefit of the wife, the case in which he invests community funds in bonds payable to him or the wife seemingly presents little difficulty *provided he dies first.* A number of situations will doubtless arise, however, in which a consistent application of the Texas law will require us to say that the purported contract is ineffective and that absolute ownership does not vest in the surviving co-owner. The most obvious, of course, is the case in which the husband invests community funds in bonds payable to him or the wife and the wife dies first.

In that situation the bonds undoubtedly became part of the community estate upon their acquisition. Under our law the husband can acquire the wife's community therein only by one of the following three methods: (1) partition between the spouses in accordance with the provisions of Sec. 15, Art. 16, of the Constitution and Art. 4624a, Vernon's Ann. Texas Civ. Stat., (2) bequest or descent, or (3) gift inter vivos. No difficulty will be presented by the cases in which bonds have been set apart to the husband in a valid partition between the spouses or in which the wife's interest passes to the husband by her will or under the laws of descent and distribution. Absent any of these circumstances, however, it cannot be said that the wife's interest belongs to the husband after her death except upon the theory of a gift inter vivos.

Facts necessary to establish a gift *in praesenti* are lacking in the typical case, and the right of the husband to the wife's one-half of any bonds on hand at the time of her death must depend upon whether a valid survivorship contract in his favor has been made. That is a matter expressly dealt with by Sec. 46 of the Probate Code. After stipulating that the interest of one joint owner who dies before severance shall descend and vest in his heirs or legal representatives, this statute contains the following proviso:

"* * * Provided, however, that by an *agreement of joint owners of property,* the interest of any joint owner who dies may be made to survive to the surviving joint owner or joint owners, *but no such agreement shall be inferred from the mere*

*fact that the property is held in joint ownership."* (Emphasis supplied).

An investment by the husband of community funds in "or" bonds certainly does not amount to an agreement by the wife that the securities shall be the exclusive property of the husband in the event of her prior death. There simply is no agreement in writing by the joint owners of the property as required by the statute, and the right of survivorship cannot be inferred from the mere fact that the property is held in joint ownership. In a case where the wife dies first, therefore, it cannot consistently be said that a solution as to the property rights of the surviving co-owner rests in contract.

When that situation arises, it seems to me that we shall be compelled to choose between two alternatives. The first would be to recognize that the majority holding applies only in cases where the husband dies first. If that route is followed, there will be no uniform rule and whether the surviving co-owner becomes the absolute owner of the bonds will depend entirely upon chance. That treatment of the problem can hardly be regarded as fair to the marital partners and their estates.

The other course would be to say that the federal regulations are paramount, and that all of our laws affecting the rights and powers of the marital partners with respect to their community property must yield thereto. We carefully refrained from taking that step in the Edds case, and I feel that it should be avoided now and in the future. The majority opinion seems to intimate, however, that we are ready to adopt this approach when it states that "to give supremacy to the Federal regulations no more affects community property than laws of descent and distribution."

A recent decision of the Supreme Court of the United States makes it clear that the states are free to enforce their local laws with respect to a transaction involving Federal securities provided the matter is of purely local concern, the dispute is between private parties, and the rights of the United States are not involved. In Bank of America National T. & S. Ass'n. v. Parnell, 352 U.S. 29, 77 Sup. Ct. 119, 121, 1 Law Ed. 2d 93, the court said:

"Securities issued by the Government generate immediate interests of the Government. These were dealt with in Clearfield Trust and in National Metropolitan Bank v. United States,

323 U.S. 454, 89 L. Ed. 383, 65 Sup. Ct. 354. But they also radiate interests in transactions between private parties. The present litigation is purely between private parties and does not touch the rights and duties of the United States. The only possible interest of the United States in a situation like the one here, exclusively involving the transfer of Government paper between private persons, is that the floating of securities of the United States might somehow or other be adversely affected by the local rule of a particular state regarding the liability of a converter. This is far too speculative, far too remote a possibility to justify the application of federal law to transactions essentially of local concern."

The Treasury Department is required to follow state statutes and decisions in determining ownership of property for estate tax purposes. Allen v. Henggeler, 8th Cir., 32 Fed. 2d 69; Hernandez v. Becker, 10th Cir., 54 Fed. 2d 542. It seems quite anomalous then for a state court to say that Treasury Department regulations override its local laws in matters of purely private ownership.

Instead of choosing either of the alternatives suggested above, I would draw the line at the point where we now stand. The earlier Texas decisions already mentioned need not be disturbed, but the principle there applied should not be extended to securities acquired with community funds. Both ownership and devolution of the latter class of property should be controlled and determined by established principles of community property law. If this approach is adopted, the conclusion to be reached under any state of facts will probably be fair to both of the marital partners and their estates. It also will not produce the undesirable tax consequences of the majority holding in this case.

The intent of the alleged donor is always a crucial inquiry in any case of asserted gift. Since the bonds in the Edds case contained an express declaration to "pay on death," it was not unreasonable to say that the purchaser intended for them to belong to the surviving beneficiary. The presumption of an intention to make a gift is also justified in the situation where "or" bonds were purchased by the deceased co-owner with his or her separate funds. I cannot believe, however, that the average husband and wife who invest community funds in this type of property intend to forego the right to dispose by will, or to deprive their respective heirs of the right to receive, one-half of the proceeds in the event either should die before the bonds

are cashed. In most cases their only purpose is to provide a convenient means of cashing the bonds, and we should not hold that the proceeds become the absolute property of the survivor unless an intention to make a gift is evidenced by something more than the Federal regulations and the form in which the bonds are issued.

It was pointed out in the Edds case that the situation of the parties to bonds which are payable on death to a designated beneficiary is substantially the same as that of the insured and beneficiary under a policy of life insurance. This should be a pointed reminder of the difficulties which were encountered in the life insurance cases once a departure was made from accepted principles of community property law. It should be noted, moreover, that while the proceeds of a life insurance policy purchased with community funds were held to belong to the designated beneficiary in the absence of fraud, our decisions suggest that the heirs or legatees of a deceased spouse might have a claim for one-half of the cash surrender value of the policy as it existed at the time of death. See Warthan v. Haynes, 155 Texas 413, 288 S.W. 2d 481; Volunteer State Life Ins. Co. v. Hardin, 145 Texas 245, 197 S.W. 2d 105, 168 A.L.R. 337; Womack v. Womack, 141 Texas 299, 172 S.W. 2d 307. There are even more compelling reasons for reaching such a result in the case of "or" bonds purchased with community funds. The surviving co-owner is undoubtedly the legal owner for the purpose of cashing the bonds but should in equity be required to account to the estate of the deceased co-owner for one-half of the value of the bonds as of the time of the latter's death.

Opinion delivered November 5, 1958.

Rehearing overruled December 31, 1958.