**J. W. FREE, Appellant,**

v.

**James F. BLAND, Individually, and as Independent Executor, Appellee.**

No. 7223.

Court of Civil Appeals of Texas.

Texarkana.

July 12, 1960.

Rehearing Denied Sept. 6, 1960.

Fulton, Hancock & McClain, Edwin M. Fulton, Gilmer, for appellant.

Olin P. McWhirter, Greenville, Florence, Garrison & Holt, Gilmer, for appellee.

FANNING, Justice.

■ Appellant, J. W. Free, sued appellee James F. Bland, individually and as independent executor of the estate of Mary Ida Free, for recovery of the title to and possession of certain United States Savings Bonds, together with accrued interest thereon, and for a judgment declaring that appellant was the sole owner of said bonds and that appellee had no rights therein.

Both parties are in agreement upon the essential facts of the case. J. W. Free and Mary Ida Free were husband and wife until her death on April 23, 1958. Among other United States Savings Bonds purchased during this marriage, from the years 1941 through 1945, were the following co-owner bonds, payable to "Mrs. Mary Ida Free or Mr. John W. Free"; "Mr. John W. Free or Mrs. Mary Ida Free"; "John W. Free or Mrs. Ida Free"; "J. W. Free or Mrs. Ida Free"; and "Mr. John W. Free or Mrs. Ida Free", to-wit: seven "E" bonds of the par value of $1,000 each; four "F" bonds of the par value of $1,000 each; one "F" bond of the par value of $5,000; and seven "F" bonds of the par value of $10,000 each. Upon the death of Mary Ida Free, all the co-owner bonds listed above were uncashed, having an aggregate value of $87,035.50. Mary Ida Free's written will, duly probated in Upshur County, Texas, vested the bulk of her estate in her son, James F. Bland, appointing him independent executor, for which he duly qualified.

In appellee's answer and cross action to appellant's suit, he claimed that, because the Frees used community funds to purchase the co-owner bonds listed above, he as the heir to the bulk of Mrs. Free's estate was entitled to one-half the bonds, or, as an alternative, to one-half their value. Appellant filed a motion for summary judgment, with supporting affidavits, to which the appellee filed no reply, nor controverting affidavits. Upon a hearing on appellant's motion, the trial court, on November 23, 1959, rendered judgment for the appellant for the title to and possession of said co-owner bonds, but at the same time ordered that appellee, in equity, ought to recover from appellant one-half of the value of the bonds, and fixed a lien on the proceeds thereof to enforce the judgment.

J. W. Free has appealed. Appellant's first three points of error are based upon the contention that, since the purchase of the co-owner United States Savings Bonds constituted a contract which guarantees, among its other provisions, payment to either surviving co-owner of the bonds in the event of the death of the other, and, since there was no pleading or proof that purchase of the bonds was in fraud of the community property rights of Mary Ida Free, the trial court erred in rendering judgment against the appellant for one-half of the value of the bonds and fixing a lien thereon. In this connection it is appellant's prime position that under the record in this cause he is entitled to the rendition of a judgment in his favor for the full title and possession of the bonds in question and all the fruits thereof, free and clear of any and all claims and liens asserted by appellee.

The regulations of the United States Treasury Department which pertain here (Department Circular No. 530, as revised) provide that "If either co-owner dies without the bond having been presented and surrendered for payment or authorized reissue, the surviving co-owner will be recognized as the sole and absolute owner of the bond and payment or reissue, as though the bond were registered in his name alone, will be made only to such survivor * * *."

A few courts in states other than Texas, notably the Louisiana Supreme Court in Slater v. Culpepper, 222 La. 962, 64 So.2d 234, 37 A.L.R.2d 1216, have held this regulation to be merely a method of payment designed for the convenience of the government; also see the case of In Matter of Estate of Allen, 343 P.2d 867, Supreme Court of Washington, which follows the

Slater v. Culpepper case, but which also recognizes that the Supreme Court of Texas reached the opposite conclusion in Ricks v. Smith, Tex., 318 S.W.2d 439, and in the course of its opinion in said cause the Supreme Court of Washington stated [343 P.2d 869]:

*"We are not unmindful of the fact that the supreme court of Texas, although badly divided, reached the opposite conclusion in Ricks v. Smith, Tex., 318 S.W.2d 439. However, we prefer and adopt the view of the supreme court of Louisiana in Slater v. Culpepper, 222 La. 962, 64 So.2d 234, 237, 37 A.L.R.2d 1216. * * *"*

Appellee relies principally on the Slater v. Culpepper case, supra, the Allen Estate case, supra, and the dissenting opinion of Justice Walker in Ricks v. Smith, supra.

The Supreme Court of Texas in Ricks v. Smith, Tex., 318 S.W.2d 439, 440, divided 6 to 3, with Chief Justice Hickman writing the opinion for the majority. We quote from said majority opinion in part as follows:

"It cannot be questioned that the opinion of the Court of Civil Appeals follows the rule adopted by a majority of the courts. A number of cases from other jurisdictions are cited in the annotation in 37 A.L.R.2d 1216 et seq. The annotation is to the Louisiana case of Slater v. Culpepper, 222 La. 962, 64 So.2d 234, 37 A.L.R.2d 1216, which case declined to give controlling effect to the Treasury regulations incorporated in the bonds, holding that to do so would nullify community property law of that State. While that case is the only one cited from a State having community property law, we agree with the Court of Civil Appeals that the purchase of the bonds was by a contract which created a property right,—not merely a method of payment for the convenience of the Treasury Department. There is no sanctity

of the community property law above that of other types of law. To give supremacy to Federal regulations no more affects community property law than laws of descent and distribution. The solution as to the property rights of the surviving co-owner of 'or' bonds rests in contract, and that contract becomes a part of the bonds. The decisions in this jurisdiction cited in the opinion of the Court of Civil Appeals, while not deciding the precise question here presented, are certainly in harmony with the majority rule followed by that court. We, therefore, approve that holding."

The Court of Civil Appeals' opinion in Smith v. Ricks, Tex.Civ.App., 308 S.W. 2d 941, 946, in specifically refusing to follow the Slater v. Culpepper case stated:

"In further support of their contention, appellees strenuously urge upon the Court the reasoning employed in Slater v. Culpepper, 222 La. 962, 64 So.2d 234, 37 A.L.R.2d 1216; Winsberg v. Winsberg, 220 La. 398, 56 So.2d 730. Both of these decisions follow the holdings of a minority of the courts (See 37 A.L.R.2d 1216) to the effect that irrespective of the Treasury regulations, which provide that the co-owner named in a United States Savings Bond, when predeceased by the other co-owner, will be recognized as the sole owner, nevertheless, if the bonds were purchased with community funds, the proceeds thereof remain the community property of the husband and wife under the laws so providing of the State of their residence, and the heirs or legatees of the spouse first dying may proceed in reconvention against the estate of the surviving spouse holding or collecting on the bonds for a one-half interest representing the interest of the spouse first dying.

"The majority of the courts, however, follow the reasoning discussed by

the late Associate Justice Smedley in Edds v. Mitchell, 143 Tex. 307, 184 S. W.2d 823, 829, 158 A.L.R. 470, to the effect that the Federal statutes 'authorizing the Secretary of the Treasury to issue the bonds, subject to such terms and conditions as he may prescribe, and the Treasury regulations under which they are issued are the valid exercise of the constitutional power "to borrow Money on the credit of the United States" (article 1 § 8, cl. 2), and that "no state law can vary the terms of the Federal obligations or derogate from their full enforceability." ' "

In 37 A.L.R.2d at page 1223, it is stated:

"Right of surviving co-owner, generally.

§ 3.  Majority view.

(a)  Generally.

"The rule followed by a majority of the courts, frequently called the 'majority rule,' with respect to rights in United States savings bonds registered in the names of two individuals in the alternative, upon the death of one of the co-owners, is that the surviving co-owner is vested with the sole ownership in such bonds, at least in the absence of fraud or other inequitable conduct on the part of the survivor."

The dissenting opinion of Justice Walker in Ricks v. Smith, supra, joined in by two other Justices, is heavily relied upon by appellee as supportive of his position in this case.  However, the majority opinion in Ricks v. Smith, supra, written by Chief Justice Hickman, was agreed to by five other Justices of the Supreme Court, with the Supreme Court dividing 6 to 3 on the case.  This court accepts the majority opinion in Ricks v. Smith, supra, as being controlling and decisive.

There was no pleading in the case at bar that the purchase of the bonds in question was in fraud of the community property rights of Mary Ida Free.  The bonds in question were bought with the Free's community funds and were made payable to either Mr. Free or Mrs. Free, in conformity with the U. S. Treasury regulations, and a full twelve years elapsed between the purchase of the bonds and the death of Mrs. Free, and certainly under this record there was no actual fraud shown on the part of the husband in investing community funds in the bonds.  It is our further view that under this record the purchase of the bonds and their subsequent passing to the appellant by reason of the unpredictable prior death of Mrs. Free (and under the contractual provisions of the U. S. Treasury regulations) does not in law amount to a constructive fraud upon the estate of Mrs. Free.  Also, if Mr. Free had died first and the bonds had passed to Mrs. Free under the contractual treasury regulations we do not think it could be held that a constructive fraud had been committed against Mr. Free's estate by the purchase of the bonds in question under the record in this case.

■  This court, being an intermediate appellate court, will follow the majority opinions of the Supreme Court of Texas. After careful consideration of the matter it is our considered judgment that the majority opinion of the Supreme Court of Texas in Ricks v. Smith, supra, is controlling and decisive of this case and requires that the judgment of the trial court be reversed and rendered in favor of appellant awarding him full title and possession of the bonds in question, and the fruits thereof, free and clear of any and all asserted claims and liens of appellee.

The judgment of the trial court is reversed and judgment is here rendered in favor of appellant for the full title and possession of the bonds in question, and all the fruits thereof, free and clear of any and all claims and liens asserted by appellee.

Reversed and rendered.